MICHAEL O'LEARY, Administrator, *v.* THOMAS SLOO, Executor.

Extracts from books required to be kept by the comptroller of a municipality of the city of New Orleans, although not conclusive of the facts shown by them, are admissible in evidence.

A municipality of the city of New Orleans has the power to order side-walks and gutters, and the proprietors of property in front of which such improvements are made, are liable for two-thirds of the cost of the improvements.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge,* J. *Race* and *Foster*, for plaintiff. *E. Rawle*, for defendant. The judgment of the court was pronounced by

PRESTON, J. The plaintiff sues the defendant for two-thirds of the cost of side-walks, of curb stones and wooden gutters, made and laid in front of his property on Dryades, Terpsichore and Euterpe streets, in the Second Municipality.

By an ordinance of the Council of Municipality Number Two of the city of New Orleans, passed on the 10th of July, 1847, the surveyor of the municipality was authorized to enter into a contract with *Dennis O'Leary*, of whose succession the plaintiff is the administrator, for laying the curb and gutter stones, and brick work of the unfinished side-walks of the municipality, within certain limits between Felicity Road and Triton Walk, in which the property of the defendant is situated, at the rate of one dollar and fifty cents the running foot for the twelve feet banquettes, and one dollar and forty cents for the remainder; two-thirds of the cost thereof to be paid by the proprietors before whose property the side-walks should be laid; and that the contractor should be subrogated to the rights and privileges of the municipality, with power to enforce payment.

4

On the 6th of August following, a contract was made by the surveyor with *O'Leary*, to perform the work in pursuance of the ordinance.

In pursuance of the contract, the side-walks and curb stones were laid in front and around the property of the defendant. Wooden gutters were also made. A witness, who was clerk of the surveyor and saw the work, proves that it was done, and that it appeared to be well done, and was accepted by the surveyor.

This evidence would be sufficient as to the execution of the work, without the extracts from the surveyor's books, and the bills made out by the comptroller of the municipality, which were offered and received in evidence, notwithstanding the objection and exception of the defendant's counsel. Nevertheless, as the surveyor is required by the ordinances to keep books and make entries embracing the subjects under consideration, and as the comptroller is likewise required to keep books, in which claims against and in favor of the municipality are recorded, there is no violation of the rules of evidence in receiving extracts and copies from those books in evidence, and also bills accurately made from those books, although they may not be conclusive of the facts intended to be proved by them. We consider, therefore, the execution of the work for which payment is claimed, satisfactorily proved. Still many objections are made to the payment.

It is said, the municipality had no power to order side-walks and gutters to be made at the expense of the defendant. As early as 1805, the Legislative Council of the Territory of Orleans, gave to the corporation of New Orleans the power of opening, regulating and improving streets, (B. & C. 96,) and to cause pavements to be constructed in every part of the city. In 1816, this power was more definitely given as to side-walks by the Legislature, by authorizing the corporation to determine the completion and dimensions, the maintenance and repair of the side pavements in the streets, at the cost of the proprietors of houses, lands and neighboring lots. B. & C. 101. Ever since, the making of side-walks with brick and a stone curb and gutter has been regarded as paving, in the law and ordinances. By common consent, it is considered that the term pavement embraces the brick side-walks, of which the curb and gutters form a part. The corporation, therefore, to which the municipality has succeeded, had the legislative power to order these improvements and to impose two-thirds of the expense thereof upon the adjacent proprietors.

It is said, the ordinance requires stone gutters. There is no doubt that the municipality, under both the ordinance and contract, might require stone gutters, but, being satisfied, from some cause through their surveyor who has accepted the work, with wooden gutters, we do not see in the record any good reason for the defendant to complain.

It is strenuously urged, that the defendant is liable for only one-third of the cost of the improvements. The ordinance of 1827 is referred to, which is certainly obscure, but has ever been construed by the municipal authorities to impose two-thirds of the cost of such improvements on the proprietor in front of whom they are made. But however that may be, the ordinance under which the work, which is the subject of this controversy, was done, is very explicit, that two-thirds of the cost of the work was to be paid by the proprietors before whose property the side-walks should be laid.

There is nothing in the seventh section of the act of the 20th of March, 1840, with which this ordinance conflicts. The section refers to the existing laws as

to the payments for pavements in the city. The true and, until lately, general interpretation of these laws is, that the proprietor on each side of the street is to pay one-third of the cost of the banquettes and pavement of the street, and the city the remaining third. The proprietor on each side is, therefore, to pay two-thirds of the half of the work on his side of the street, or one-third of the whole work, and the city the other third of the cost of the whole work.

It is urged, that the contract should have been adjudicated by the mayor to the lowest bidder. That is required by the act of 1850, but it was passed subsequent to this contract. It was also required by a general ordinance in 1836, but that is superseded in this particular case by the special ordinance under which the contract was made. So, also, the general provision authorizing the mayor of the city to make and sign municipal contracts, must yield to the particular ordinance requiring that duty to be performed by the surveyor in this case.

The ordinance and contract are somewhat indefinite as to location, but not so much so as to require, as contended, another ordinance to embrace the defendant's property. Both are more indefinite as to the price of the work. It is agreed that it is to be done " at the rate of one dollar and fifty cents per running foot for the twelve feet banquette, and one dollar and forty cents for the remainder." It appears that the banquette on Dryades street was twelve feet wide, and those on Terpsichore and Euterpe streets, eight feet wide. The defendant contends, that the whole work on Dryades street was to be done for one dollar and fifty cents the running foot, and that on the other two streets at the rate of one dollar and forty cents the running foot. The plaintiff insists that those sums were to be allowed for the banquettes alone, and fifty cents a running foot for the gutters, sixty-five cents a foot for part of the curb, and fifty-five cents a foot for the balance. It is possible that the municipality so intended by their ordinance and contract, and that they may receive such an interpretation against the municipality, as they made both, and are liable to a liberal interpretation in favor of others, in consequence of making the ordinance and contract so loosely. But we cannot enlarge the price of the contract in this manner, by interpretation against the defendant, who was no party to it.

The defendant is liable for two-thirds of the price of two hundred and fifty-five feet nine and two-eighth inches of banquettes, at one dollar and fifty cents the running foot, and two hundred and fifty-five feet nine and two-eighth inches at one dollar and forty cents the running foot, or for four hundred and ninety-six dollars and forty-nine and one-third cents, with legal interest from the judicial demand.

The judgment of the district court is reversed, and judgment rendered in favor of the plaintiff against the defendant, for four hundred and ninety-six dollars and forty-nine and one-third cents, with five per cent interest from the 30th of September, 1850, till paid, and costs in the district court; the costs of the appeal to be paid by the plaintiff.