CASE 22—PETITION EQUITY—MAY 6.

# Preston v. Rudd, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

IN ASSESSING PROPERTY TO PAY FOR STREET IMPROVEMENTS, the municipality having decided that the assessed area or tax district as an entirety will be benefited by the contemplated improvement, a lot owner may be compelled to pay his proportion of the cost of the improvement unless the absence of benefit and of public need of the improvement make it manifest that the burden amounts to spoliation and not legitimate taxation, in which event the burden can not be imposed.

JOHN STITES AND BROWN & DAVIE FOR APPELLANT.

Brief not in record.

LANE & BURNETT FOR APPELLEES.

1. The Legislature may provide for an assessment to pay the cost of the local improvement of a public way according to benefits, or by square feet within a given area, or according to frontage, and if the Legislature has fixed the district and laid the tax for the reason that in the opinion of the legislative body such district is peculiarly benefited, its decision is conclusive. (Dillon on Municipal Corporations, section 596; Cooley on Taxation, 450; Desty on Taxation, volume 2, page 1263; Burroughs on Taxation, 469; Lexington v. McQuillan, 9 Dana, 513; Louisville v. Hyatt, 2 B. M., 177; Pearson v. Zable, 78 Ky., 170; Mayor v. Hopkins, 56 Md., 1; Warren v. Henley, 31 Iowa, 31; People v. Mayor, 4 Comstock, 419; Baltimore v. Hughes, 1 Gill & John., 480; Litchfield v. Vernon, 41 N. Y., 123; People v. Lawrence, 41 N. Y., 140; St. Louis v. Octus, 36 Mo., 456; Shaw v. Dennis, 5 Gilman, 416; Philadelphia v. Field, 58 Pa. St., 320; Pennock v. Hoover, 5 Rawl., 291; McGonigale v. Alleghany City, 44 Pa. St., 118; Magee v. Commonwealth, 46 Pa. St., 308; Spring Garden v. Wister, 18 Pa. St., 195; Stroud v. Philadelphia, 61 Pa. St., 225; Covington v. Boyle, 6 Bush, 204; State v. Elizabeth, 30 N. J., 365; State v. Elizabeth, 31 N. J, 547; State v. Fuller, 34 N. J., 227; Ernst v. Kunkle, 5 Ohio St., 520; Upington v. Oviatt, 24 Ohio St., 232; Barnes v. Atchison, 2 Kansas, 455; Parker v. Challis, 9 Kansas, 155; St. Joseph v. Anthony, 20 Mo., 537; Fowler v. St. Joseph, 37 Mo., 228; Neenan v. Smith, 50 Mo., 525; Chambers v. Satterlee, 40 Cal., 497; Palmer v. Stumpf, 29 Ind., 329; Allen v. Drew, 44 Vt., 174; Williams v. Detroit, 2 Mich., 560; Mentz v.

Preston v. Rudd, &c.

Detroit, 18 Mich., 495; King v. Portland, 2 Oregon, 146; Willard
v. Presburg, 14 Wall., 676; Morrison v. Hershire, 31 Iowa, 271;
Clapp v. Hartford, 35 Conn., 66; Hines v. Leavenworth, 3 Kan.,
186; Railroad Tax Cases, 8 Sawyer, 274.)

2. The provisions of the charter of the city of Louisville, which give
the defendant a judicial hearing in respect to any errors in the assess-
ment for the cost of improving public ways, provide due process of
law. (Beck v. Obst, 12 Bush, 268; Davidson v. New Orleans, 96
U. S., 97; Hamar v. The Reclamation, &c., 111 U. S., 701.)

3. To the full extent of their value lands can be subjected to the cost
of improving the public ways on which they bind. (Taylor v.
Palmer, 31 Cal., 240; Neenan v. Smith, 50 Mo., 525; Carlen v.
Cavender, 56 Mo., 286; St. Louis v. Brester, 56 Mo., 350.)

4. If municipal corporations, in making street improvements, exercise
reasonable care and skill in the performance of the work, they are
not answerable to the adjoining owner for consequential damages to
his premises. (Callender v. Marsh, 1 Pick., 418; Brown v. Lowell,
8 Met., 172; Benjamin v. Wheeler, 8 Gray, 409; Radcliff v. Mayor,
4 Comstock, 195; Gosler v. Georgetown, 6 Wheaton, 593; Smith v.
Washington, 20 How., 135; Keasy v. Louisville, 4 Dana, 154.)

5. When the organic law of a State or of a municipal government pro-
vides how the passage of its laws shall be authenticated, the required
authentication is conclusive evidence of the due passage. (State v.
Young, 5 Amer. Law Reg., 679; Auditor v. Haycraft, 14 Bush.
287; Evans v. The Auditor. 30 Ind., 524; Pacific Railroad v. The
Governor, 23 Mo. 353; Sherman v. Story, 30 Cal., 253; Swan v.
Buck, 40 Miss., 268; Fouke v. Fleming, 13 Md., 392; Mayor v. Har-
wood, 32 Md., 471; People v. Devlin, 33 N. Y., 269; People v.
Starne 35 Ill., 121.)

6. Under the peculiar provisions of the charter of the city of Louisville,
ordinances providing for the improvement of streets are not void
merely because the general council fails to follow strictly its dele-
gated powers. (8 Bush. 515.)

7. The passage of an ordinance in the manner provided by the charter
must be presumed unless the contrary appears. (Dillon on Muni-
cipal Corporations, section 247; Lexington v. Headley, 5 Bush, 508;
Covington v. Boyle, 6 Bush, 204; McCormick v. Bay City, 23 Mich.,
457; Steckert v. East Saginaw, 22 Mich., 104.)

8. An apportionment of the cost among the adjacent lots and ground,
made out by the city engineer and approved by the general coun-
cil, constituted an apportionment of the cost by the general council.
(Preston v. Roberts, 12 Bush, 570; Dulaney v. Bowman, MS. Op.,
Jan. 29, 1875.)

9. The grade of a street, in the absence of any charter provision to
the contrary, may be established by resolution. (State v. Jersey, 3

Dutcher, 493; Sower v. Philadelphia, 35 Pa. St., 235; Gas Company v. San Francisco, 6 Cal., 190; City of Louisville v. Louisville Rolling Mills, 3 Bush, 416.)

10. Even if the Legislature had no power to make the copies of the ordinance, contract, etc., *conclusive* evidence of the due passage of the ordinance and of the due execution and approval of the contract, the act is void only so far as it attempts to make them *conclusive* evidence, it being competent for the Legislature to make the copies *evidence* of the recited facts. (McCready v. Sexton, 29 Iowa, 356; Cooley on Constitutional Limitations, 178; 13 Howard, 472; 13 Wallace, 306; 33 Maine, 76; 57 Maine, 517; 12 N. Y., 541; 37 Mo., 44; 38 Mo., 29; 63 Pa. St., 444; 7 Wis., 44.)

ELLIOTT & HEMINGRAY, OF COUNSEL ON SAME SIDE.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The appellees seek to enforce a contractor's lien for the improvement of that portion of Jackson street in the city of Louisville, between Fulton and Water streets, against certain lots of the appellant, Wm. Preston, lying adjacent to or near the improvement.

The relief sought is resisted upon numerous grounds, none of which are, in our opinion, well founded, save the one which we will now consider.

Jackson street runs north and south. Opening from it prior to and when the improvement was made, and northwardly, and from a point on it between Fulton and Water street, was Brady street, which was a *cul de sac*, the only way of ingress to and egress from it being by way of Jackson street. Upon the south side of Brady street were three lots, belonging to the appellant, one of which adjoins Jackson street on the west, and the other two lie immediately north of this one, all fronting upon Brady street, and upon the rear line of which is a railroad embankment, which cuts off approach to

them from that direction. The appellant also owns several lots upon the north side of Brady street; but the lots upon that side of the street front upon Fulton street.

By the improvement the grade of Jackson street, at the point where Brady street leaves it, is about twelve feet higher than the latter street, and gradually gets still higher from thence to Water street. In this way all mode of ingress to and egress from Brady street has been cut off, and the three lots of the appellant upon the south side of it are twelve feet or more below the level of Jackson street. Its grade, and the closing of Brady street thereby, and the railroad embankment in the rear of these lots, has not only effectually cut off egress and ingress to them, but has converted them, for the most part, into a pond, and rendered them almost, if not altogether, worthless.

Prior to the improvement the appellant had some tenement houses on them, from which he derived considerable rent, they being for the most part occupied by cartmen. Portions of the lots were also used for storage; and wagons and carts passed to and from them by way of Brady street, entering it from Jackson street. This is now impossible. The houses have been either washed away or rendered uninhabitable by the water, and the lots are unapproachable by street.

The territory contiguous to the improvement, not being defined into squares by principal streets, the council of the city, in accordance with the act of the Legislature amendatory of its charter, approved

March 24, 1882, apportioned the cost of it upon the land upon each side of the street to a certain distance, the owners thereof being assessed according to the number of square feet respectively owned by each within the taxable district thus created.

The sums assessed against the appellant's said three lots were respectively four hundred and eleven dollars and eighteen cents, four hundred and forty-two dollars and sixty-nine cents, and three hundred and ninety-two dollars and ninety-five cents, or one thousand two hundred and forty-six dollars and eighty-two cents. It is manifest that, since the improvement of the street, this is much more than they are worth.

It not only produced a greatly depreciated value—if, indeed, they now have any—but to aid in its payment an assessment has been made upon them which unquestionably exceeds any value they now have in the opinion of any one.

This at once strikes the mind as an arbitrary apportionment of the burden of taxation, which can not possibly be just. The power to tax is based upon the ground of benefit. It proceeds upon the idea of *equivalents*.

The citizen pays taxes to support his government, because it affords him protection. Local assessments are imposed for local improvements, because the property near them is peculiarly benefited. We do not mean that each piece of property within the assessment district must be benefited, or that all must be benefited alike. This would be impossible. Uniformity in the imposition of tax, but not of individual

benefit, is required. Absolute equality is unattainable. The wit of man has never devised a system of taxation perfectly equal. Recognizing this fact, it has been held that an assessment according to the frontage of the lots upon the improvement, although it can only approximate equality as to benefits, is a proper standard, upon the idea that benefits to abutting lots are in proportion to the length of fronts; but yet this is not allowable, if, under the circumstances of the case, it works a *manifest injustice*.

Subject to the like restriction, assessments have been upheld when made in proportion to the *superficial area* of the lots. (2 Dillon's Mun. Corp., section 761.)

In considering the question, however, we must look to the area which constitutes the tax district. The Legislature, or the municipality to which it has delegated authority to act in the matter, must, from necessity, decide primarily whether the assessed area or tax district as an entirety will be benefited by the contemplated improvement; and its decision upon the question, and whether the public need demands the improvement, must be regarded as final, unless the absence of benefit and public need of the improvement manifest that it is spoliation, and not legitimate taxation.

The question of assessment or apportionment can not be governed by advantage or disadvantage to one person within the district. If so, public improvements could rarely be made. The Legislature must necessarily look at the district as a whole, and upon

this general view determine whether such benefits will accrue from the improvement as will authorize its cost to be imposed upon the adjacent property. Such assessments are made upon the assumption that a portion of the community are specially benefited by the improvement; the principle is that the territory is benefited; that it has a common interest, and that, governed by equitable rules, it must equally bear the burden. Necessarily, individual cases of hardship will arise; but it approaches equality as nearly as is practicable. It follows that a lot-owner may be compelled to pay his proportion of the cost of an improvement, although in his particular case his property may not be benefited.

This rule, however, can not be so extended as to entirely take from the citizen his property. This would work "a manifest injustice." It would be spoliation, and not taxation. Under the guise of benefit and taxation, he can not be thus arbitrarily deprived of his property.

It would be but an appropriation of it, by the exercise of arbitrary power, to public use without compensation. It is not to be supposed that the Legislature intended to attempt to confer such power upon the municipality, and to allow it, at mere will, to distribute burdens destructive of entire right and property. Such absolute arbitrary power over the property of the citizen nowhere exists under our form of government. Our Bill of Rights says:

"That absolute, arbitrary power over the lives, liberty, and *property* of freemen exists nowhere in a republic, not even in the largest majority."

It clearly appears that, aside from all question of benefit to these three lots of the appellant, an assessment has been made upon them, which, in their now condition, far exceeds their entire value. We are aware that the courts of Missouri and California have held that the cost of improving public ways may be imposed upon the adjacent property to the extent of entirely depriving the owner of it; but we can not subscribe to this rule, because, in our opinion, it is spoliation and not taxation, and violative of the fundamental law.

The judgment is reversed as to the amounts *supra* allowed as to said three lots, with directions to dismiss the petition as to them; but the evidence does not authorize the action of the lower court as to the other lots to be disturbed; and for further proper proceedings.