SPEER *et al. v.* THE MAYOR AND COUNCIL OF ATHENS.

1. Whether proper notice has been given before the introduction of a local or special bill, is for decision by the legislature, and where an act is attacked as unconstitutional for want of such notice, evidence in regard thereto outside of the journals of that body, will not be received by the courts.

2. The act approved October 16th, 1889, conferring upon the Mayor and Council of the City of Athens power " to construct, pave and otherwise improve sidewalks in said city, and to assess and collect the cost thereof out of the real estate abutting on the sidewalk so constructed, paved or otherwise improved," is not in violation of the constitutional requirement that taxation shall be *ad valorem* and uniform, such assessments not being taxation within the meaning of the constitution.

3. Nor is the owner of such real estate thereby deprived of his property without due process of law, the act providing that when execution is issued for the amount of the assessment, he may file an affidavit denying the whole or any part thereof, which affidavit is made returnable to the superior court, the issue thereon to be tried and determined as in cases of illegality. At such hearing he may show fraud or mistake, error or excess in the amount of the execution, want of statutory authority to support the assessment, or failure to comply with the provisions of the statute and the ordinances in pursuance thereof.

(a) Benefit to the owner of the real estate assessed, so far as necessary to be passed upon, as well as the necessity or reasonableness of the improvement, being for the determination of the legislature, is concluded by the act authorizing the assessment, and will not be enquired into by the courts unless in extraordinary cases presenting a manifest abuse of legislative authority. Such assessments, not being an exercise of the right of eminent domain, do not fall within the constitutional provision that private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid.

July 12, 1890.

Statutes. Notice. Evidence. Constitutional law. Streets and sidewalks. Assessments. Taxation. Before Judge HUTCHINS. Clarke county. At chambers, December 18, 1889.

Reported in the decision.

A. M. SPEER and E. W. SPEER, for plaintiffs.

A. J. COBB and E. T. BROWN, for defendant.

SIMMONS, Justice.

In the year 1889, the legislature passed an act which was approved October 16th, " to authorize the Mayor and Council of the City of Athens to construct, pave and otherwise improve sidewalks in said city, and to assess and collect the cost thereof out of the real estate abutting on the sidewalk so constructed, paved or otherwise improved; to provide for the collection of such assessments, and for other purposes." This act gives the power to the mayor and council "in their discretion to construct sidewalks in said city and pave the same; to pave sidewalks already constructed; to put down curbing, and to otherwise improve the sidewalks now constructed or hereafter to be constructed." It gives them the power to "assess the cost of construction, paving and improving sidewalks . . on the real estate abutting on the sidewalk constructed, paved or otherwise improved." It also gives them power to assess the cost of keeping in repair the sidewalks of the city, and gives them power " to enforce the collection of the amount of any assessment under this act, by execution to be issued by the clerk of council against the real estate so assessed, and against the owner thereof at the date of the ordinance making the assessment, . . which executions may be levied by the chief of police . . on such real estate; and after advertising and other proceedings as in cases of sale for taxes due the said city, the same may be sold at public outcry to the highest bidder." It

also gives the defendant in execution the right "to file an affidavit denying the whole or any part of the amount for which the execution issued is due, and stating what amount he admits to be due, which amount so admitted to be due shall be paid or collected before the affidavit is received, and affidavit received for the balance ; and all such affidavits so received shall be returned to the superior court of Clarke county, and shall there be tried and the issue determined as in cases of illegality." Acts 1889, p. 69.

Subsequent to the passage of this act the Mayor and Council of Athens adopted a general ordinance to carry it into effect, prescribing the mode and manner in which the sidewalks of Athens should be paved, and the material to be used in the pavement thereof. One section of this ordinance provides that each of the owners of property fronting on the sidewalks required to be paved is authorized to make the pavement in front of his property himself, under the supervision of the street commissioner, within thirty days after receiving notice that the sidewalk in front of his property is one of those ordered by council to be paved. In the event of the failure of the property-owner to pave the same within the time prescribed, the city undertook to pave it; a bill of expenses or costs was to be served upon the property-owner, and if not paid by him, execution was to be issued as required by the act. Another ordinance was adopted by the mayor and council, wherein they required the sidewalks on certain named streets to be paved. On these streets the plaintiffs in error owned property. They failed and refused to pave the sidewalks in front of their property in accordance with the ordinance of the city, whereupon some of the sidewalks were paved by the city authorities. The bill of expenses was made out in each case by the person having charge of the pavement for the city and was reported to council as required by the ordinance, and a copy of the bill sent

to each one of the plaintiffs in error whose sidewalk had had been paved. Upon their refusal to pay the same, executions were about to be issued; whereupon the plaintiffs in error filed their petition to the superior court, two of them seeking to enjoin the collection of the bills, and one of them to enjoin the laying of a sidewalk in front of his property, on the ground that the act of the legislature under which the city council was proceeding is unconstitutional and void, in the following particulars : (1) because it was introduced and passed without the previous notice required by the constitution of the State; (2) because it conflicts with that provision of the State constitution which requires uniformity in taxation ; (3) because it is in conflict with that provision of the constitution of the State which requires taxation to be *ad valorem;* (4) because it is in conflict with that provision of the 14th amendment to the constitution of the United States which forbids any State from depriving any person of life, liberty or property without due process of law ; (5) because were it even, as respondents claim it to be, a local assessment for a local object, no provision is made therein for determining the benefit received or the damage inflicted by its operation. Upon the hearing of the petition and the answer thereto, the trial judge refused the injunction ; to which the plaintiffs excepted.

1. As to the first exception, the constitution, in article 3, paragraph 16 (Code, §5075), declares : " No local or special bill shall be passed unless notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be affected may be situated, which notice shall be given at least thirty days prior to the introduction of such bill into the General Assembly, and in the manner to be prescribed by law. The evidence of such notice, having been published, shall be exhibited in the General Assembly before such act shall be passed." In accordance

with this paragraph of the constitution, the legislature
of 1878 passed an act prescribing how the notice should
be published.    This act prescribes that "the title of the
bill shall be published once in the newspaper in which
sheriff's sales are advertised, and shall be posted at the
door of the court-house in the county or counties of the
residence of the person or persons  .  .  to be affected
thereby, or in which the locality or municipality is sit-
uated, thirty days before the introduction of the bill in
the House of Representatives;  .  .  and the production
of the newspaper dated thirty days prior to the intro-
duction of such bill in the General Assembly, containing
the notice required by this section, and the certificate
of the ordinary that the notice has been posted, shall
be sufficient evidence that such notice has been given
in accordance with the requirements of the constitu-
tion."    Code, §193(a).    It appears from the paragraph
of the constitution and the act of the legislature just
cited, that the legislature itself is made the judge of the
evidence as to whether proper notice has been given or
not before the introduction of the bill.    It is proposed
in this case to show by extrinsic evidence that the
proper notice had not been given for a sufficient length
of time before the bill was introduced into the legisla-
ture.    We do not think that courts are authorized to
receive such evidence, and upon it to decide whether or
not the legislature, a co-ordinate branch of the govern-
ment, has made an erroneous decision and allowed a
bill to be introduced without the notice required by the
constitution and the law.    The constitution requires
the legislature to keep journals of its proceedings, and
these journals are the only evidence which courts can
receive in an attack of this kind upon the constitu-
tionality of an act.    Judge Cooley, in his work on Con-
stitutional Limitations, 5 ed: 163 (*135), says :    " Each
house keeps a journal of its proceedings, which is a

public record, and of which the courts are at liberty to take judicial notice. If it should appear from these journals that any act did not receive the requisite majority, or that in respect to it the legislature did not follow any requirement of the constitution, or that in any other respect the act is not constitutionally adopted, the courts may act upon this evidence and adjudge the statute void. But whenever it is acting in the apparent performance of legal functions, every reasonable presumption is to be made in favor of the action of a legislative body; it will not be presumed in any case, from the mere silence of the journals, that either house has exceeded its authority, or disregarded a constitutional requirement in the passage of legislative acts, unless where the constitution has expressly required the journals to show the action taken, as for instance, where it requires the yeas and nays to be entered."

2. The second and third exceptions may be considered together, and we think they are fully disposed of by the decision of this court in the case of *Hayden* v. *Atlanta*, 70 *Ga.* 817. That case fully discusses the points made in these exceptions and overrules them. It is unnecessary for us to further elaborate the argument upon these questions.

3. By the 4th and 5th exceptions the point is made that the act is in conflict with the constitutional requirement that no State shall deprive any person of his property without due process of law; because "due process of law" implies notice and an opportunity to be heard, and proper provision for this is not made by the act. The act does provide for notice and hearing, but the objection made is that it is insufficient, in that no hearing is provided for upon the question of whether the owner of the property assessed is benefited by the improvement in a greater degree than the public, and thus benefited to the extent of the burden imposed by

the assessment; it being contended that this special benefit to the property-owner is essential to the validity of such assessments, and that "due process of law" requires that he be afforded his day in court upon the question.

In the *Hayden* case, 70 *Ga.* 817, special benefit to the property-owner, it seems, was not regarded as essential; but whatever may be the view entertained as to this, it is clear that the whole question of benefit, whether general or special, is left to the legislative discretion, and except in extraordinary cases, as hereafter explained, is not a matter of enquiry for the courts. In that case, BLANDFORD, J., in delivering the opinion of the court, says: "It is a part of the police power of the State conferred on this city. . . The blessings conferred by these improvements are shared by the owners of the property assessed, in a greater degree than the general public, *but whether this was so or not,* the power resides in the State, and the legislature may by law confer upon municipal corporations the right to make these improvements, and to assess the property fronting on the streets thus improved, for the cost of the same. . . . The power to have worked, opened, repaired and improved the public highways, streets and roads, may be exercised by the legislature in such manner and way and under such circumstances as may be deemed best. There is no limitation imposed by the constitution on this power; it rests upon the sound discretion of the legislature."

"Due process of law" in this case is such as is appropriate to the exercise of the taxing power; for while, as was held in the *Hayden* case, assessments for local improvements of this kind are not taxes within the meaning of our constitution, yet "that these assessments are an exercise of the taxing *power* has over and over again been affirmed, until the controversy must be

regarded as closed." Cooley on Taxation, p. 623. And
"the taxing power proceeds on its own methods, and
the rules of the common law bend and conform to
them." *Id.* p. 623. See also pp. 48, 49. It is due pro-
cess of law when the sovereign taxing power, by the
legislative act itself, determines that such improvements
are necessary or reasonable, or of general benefit to the
public and special benefit to the property-owner assessed.
"The power to determine when a special assessment
shall be made and on what basis it shall be apportioned,
is wisely confided to the legislature, and could not with-
out the introduction of some new principle in legislative
government be placed elsewhere. . . With the wis-
dom or unwisdom of special assessments, when ordered
in cases in which they are admissible at all, the courts
have no concern, unless there is plainly and manifestly
such an abuse of power as takes the case beyond the
just limits of legislative discretion." Cooley Taxation,
p. 622. It is not left to juries, whenever a property-
owner resists an assessment as unreasonable and unnec-
essary, to say that the sovereign taxing power has abused
its discretion. The constitutional guaranty of due pro-
cess of law has been sometimes supposed to entitle every
person to have any demand made upon him submitted
to the determination of a jury. But, says Judge Cooley,
"Such a construction applied in tax cases would work
a thorough and radical change in the principles on
which taxation is now supposed to rest. It would crip-
ple the legislative power and subject the action of the
department whose function it is to make laws on its
own views of the questions of public interest and public
policy which the laws involve, to a review and possible
reversal at the hands of a jury. . . To make the
juries the assessors of the claims of the State upon indi-
viduals could only introduce anarchy; one jury reaching
one conclusion regarding the public needs, and another

another," etc. Cooley Taxation, p. 47. It is only in those extraordinary cases where the assessment "so far transcends the limits of equality and reason that its execution would cease to be a common burden and become extortion and confiscation" that the courts can be called on to interfere. To this effect is the intimation in *City of Atlanta* v. *Gate City Street R. Co.*, 80 *Ga.* 280. See also authorities cited *infra*. The interference of the courts in such a case is not dependent on whether the act authorizing the assessment does or does not provide for a hearing; and if the courts can exercise this power without permission of the act, it cannot be contended that the act is invalid because of its failure to accord it.

Of the cases cited for the plaintiffs in error to show that the property-owner must be allowed a hearing upon the question of benefit, it will be found that most of them deal with the taking of property under the power of eminent domain; in which cases the requirements as to notice and hearing, and the questions open to hearing. are essentially different. The distinction between assessments for paving and the exercise of the right of eminent domain is recognized in the *Hayden* case, and is well-stated in Lewis on Eminent Domain, §5. See also cases hereinafter cited. Where property is taken or damaged for public improvements under the right of eminent domain, just compensation must be made to the owner, and where it is claimed that a part or the whole of that compensation comes to him in the shape of benefit, it is proper that a hearing be allowed him on that subject. The strong expressions so often quoted from the decisions in such cases as to the necessity of a hearing on the question of benefit, are thus explained. What has been said by the authorities as to the importance to persons assessed that they should have an opportunity to be heard before the charge is fully estab-

lished against them, it has been further explained, "has reference to general assessment laws under which the property of the citizens of the State is assessed or valued for the purpose and as the basis of taxation generally." Mayor, etc. *v.* Johns Hopkins Hospital, 56 Md. 29.

As to the conclusiveness of legislative action upon the question of benefit, the result of the adjudications is stated in Sheley *v.* Detroit, 45 Mich. 431 (1881), by Judge Cooley, whose work on Taxation, in the treatment of this subject, is the authority most frequently cited and commended by the Supreme Court of the United States and the courts of the country generally. He says: "We might fill pages with the names of cases decided in other States which have sustained assessments for improving streets, though the apportionment of the cost was made on the same basis as the one before us. (Frontage.) If anything can be regarded as settled in the municipal law in this country, the power of the legislature to permit such assessments and to direct an apportionment of the cost by frontage, should by this time be considered as no longer open to controversy. Writers on constitutional law, on municipal law and on the law of taxation have collected the cases, and have recognized the principle as settled. If the legislature declares that the cost . . shall be levied upon abutting lots or their owners according to values, or to assessed benefits or to *frontage,* the determination binds us absolutely and conclusively, provided we discover no want of legislative authority. There is ample ground, therefore, upon which the legislature may act when they decide that in their opinion considerations of equity require the cost of paving to be imposed upon the owners of abutting lots. We do not hold that they decide right, for that is not our concern; we only decide that they have the power and the discretion to do what they have done."

In some States where a different view was or appeared to have been held concerning the conclusiveness of legislative action upon the question of benefit, later decisions have overruled or explained the earlier cases. Former decisions of the Supreme Court of Pennsylvania, among them the Hammett case, 65 Pa. St. 146, which is dwelt upon at great length in the brief of the plaintiffs in error, are reviewed and explained in a recent decision of that court, Michener v. Philadelphia, 118 Pa. St. 535 (1888). This decision deals with what seemed to be a case of peculiar hardship to the property-owner, but says: "Of the necessity of the present sewer we cannot of course speak, nor are we required to do so. The councils are the sole judges of the necessities of sewers, and their judgment is conclusive. The plaintiff alleges, however, that his property is not *benefited* by the sewer. He may or may not be mistaken in this. We cannot say. But this is a species of taxation, and all taxation is presumed to be for the benefit, directly or indirectly, of the tax-payer or his property. . . . When a man comes to pay his *general* taxes, he cannot be permitted to allege that he derives no benefit therefrom; and it would be intolerable if in every instance of *special* taxation the question of benefits could be thrown into the jury-box. It would introduce into municipal government a novel and dangerous feature. It would substitute for the responsibility of councils, limited though it be, the wholly irresponsible and uncertain action of jurors. It is better 'to endure the ills we have than to fly to those we know not of.'"

The Court of Appeals of Maryland, in the Johns Hopkins Hospital case, 56 Md. 1 (1881), overrules a former decision (Mayor, etc. v. Scharf, 54 Md. 499), and deals at some length with this question. It holds that "Whether an improvement authorized by the mayor and council will benefit the property along the line of

such improvement, is a question left exclusively to their judgment; and their determination in the premises is final and conclusive. The courts have no power to review such determination at the instance of the property-owners specially taxed. An ordinance imposing an assessment upon the owners of adjacent property for the repaving of a street opened and condemned, is not rendered invalid by failing to make provision for notice of the proceedings under it to such property-owners, and to give them an opportunity of being heard before the charges are fully established against them, the imposition of such assessment being an exercise of the taxing power, and not of the right of eminent domain. The power to determine when a special assessment shall be made, on what basis it shall be apportioned, over what district it shall extend, and whether the particular improvement will confer a benefit upon property in the immediate locality beyond that which will accrue therefrom to property more remote or the public generally, is a power confided to the legislative department, to be exercised subject to such provisions and under such restrictions only as the law-makers may see fit in each case to prescribe." The determination that the property assessed is specially benefited is implied, unless the expressed purpose of the law or ordinance forbids the implication that special benefit was contemplated. The rule of apportionment by the front foot is approved. The opinion of the court says (p. 31): "We hold it to be clear, both upon reason and authority, that provisions for notice, or giving the right of hearing, or an appeal to the courts and a jury trial, however wise and proper they may be in point of policy, are not essential to a valid exercise of this branch of the taxing power."

In New York, the leading case of Stuart *v.* Palmer (74 N. Y. 183, 30 Am. Rep. 289), deals directly with the constitutional requirement of " due process of law "

as applied to such assessments, and holds unconstitutional a law imposing an assessment without notice to and a hearing or an opportunity to be heard on the part of the owner of the property assessed; but that case differs from the present in that no notice and hearing was there provided for by the act. And the recent case of Spencer *v.* Merchant, 100 N. Y. 587, makes it clear that the same court does not recognize the right of the property-owner to be heard as extending to the question of whether his property is specially benefited by the improvement, and to what amount or proportion of the cost, when the legislature has itself determined the question. The language of the opinion in that case is strong and unequivocal, and has met with the sanction and approval of the Supreme Court of the United States, being quoted at length, as a clear exposition of the law, by Mr. Justice Gray in delivering the opinion of the latter court in the same case. Spencer *v.* Merchant, 125 U. S. 345. Says Mr. Justice Gray: " The legislature has the power to determine, by the statute imposing the tax, what lands which might be benefited by the improvement, are in fact benefited; and if it does so, its determination is conclusive upon the owners and the courts, and the owners have no right to be heard upon the question whether their lands are benefited or not, but only upon the validity of the assessment, and its apportionment among the different parcels of the class which the legislature has conclusively determined to be benefited." In that case the act entrusted the *apportionment* to commissioners; in the present case the legislature fixed upon its own rule of apportionment, to wit, the extent of the frontage of the property upon the proposed improvement; so that in the present case the apportionment is also closed to the courts and the property-owner, except where the legislative rule is incorrectly applied, as for example, where

the property-owner is charged with a greater number of feet or quantity of material than he is chargeable with under the act. See also Roach *v.* Nevin, 128 U. S. 176; Poulsen *v.* Portland (Oreg.), 1 Lawy. Annot. Rep. 679 (1888); Allen *v.* Drew, 44 Vt. 174; County of Hennepin *v.* Bartleson, 37 Minn. 344 (1887); Lent *v.* Tilleson, 72 Cal. 404 (2), 427-8-9 (1887); Jennings *v.* LeBreton, 80 Cal. 8, 14 (1889); Emery *v.* Gas Co., 28 Cal. 346 (full discussion of question of legislative discretion as to assessments and the frontage system, and review of authorities, by Sawyer, J.); Preston *v.* Rudd, 84 Ky. 150; Daily *v.* Swope, 47 Miss. 367; City of St. Joseph *v.* Anthony, 27 Mo. 495; Egyptian Levee Co. *v.* Harden, 30 Mo. 541; McCormick *v.* Patchen, 53 Mo. 33 (repaving); Rwy. Co. *v.* Connelly, 10 Ohio St. 159; State *v.* Fuller, 34 N. J. 227, explaining Tidewater Co. case, 3 C. E. Green, 518; but see 37 N. J. 423, *infra,* limiting to sidewalks. Warren *v.* Henley, 31 Iowa, 31, holds that the expense of the improvement of streets by grading, paving, etc., may be imposed upon abutting property without regard to benefit; and the later case of Gatch *v.* Des Moines, 63 Iowa, 725, which holds that the property-owner must be afforded notice and a hearing, excludes the question of benefit. See also Dillon Munic. Corp. (4 ed.) §§760*b*, 761, Welty on Assessments, §§308, 309, and other authorities *infra.*

Illustrations of the extraordinary cases which must be presented to warant a departure from this rule of non-interference by the courts, will be found in Preston *v.* Rudd, 84 Ky. 150, and Poulsen *v.* Portland, 1 Lawy. Annot. Rep. 673, *supra,* in each of which cases the general rule itself is strongly upheld. In the former case the assessment was far in excess of the value of the property. In the latter case the exception recognized is, where property assessed is so remotely situated from the improvement charged upon it, that special benefit

to the property is physically impossible. The present case is peculiarly free from difficulty, in that the improvement in question is sidewalks. Whatever trouble or conflict may have arisen in regard to other local improvements, such as streets, sewers, etc., none such is encountered here. The conclusiveness of legislative and municipal action in determining that sidewalks shall be laid down and the expense thereof borne by the abutting owner, without any hearing from him on the question of necessity or benefit, is well-settled, not only in States where a hearing is held requisite as to assessments for street improvements generally, but in States where such assessments have been held wholly inadmissible under the constitutions of those States. The method pursued by the act of the legislature and the municipal ordinances in this case has met with the sanction of general custom and judicial approval in all parts of this country, from the earliest period to the present.

Says Cooley on Taxation, p. 588: "The cases of assessments for the construction of walks by the side of the streets, in cities and other populous places, are more distinctly referable to the power of police. These foot-walks are not only required, as a rule, to be put and kept in proper condition for use by the adjacent proprietors, but it is quite customary to confer by the municipal charters full authority upon the municipalities to order the walks of a kind and quality by them prescribed to be constructed by the owners of adjacent lots at their own expense, within a time limited by the order for the purpose, and in case of their failure so to construct them, to provide that it shall be done by the public authorities, and the cost collected from such owners or made a lien upon their property. When this is the law, the duty must be looked upon as being enjoined as a regulation of police, because of the pe-

culiar interest such owners have in the walks, and because their situation gives them peculiar fitness and ability for performing, with promptness and convenience, the duty of putting them in proper state, and of afterwards keeping them in a condition suitable for use. Upon these grounds the authority to establish such regulations has been supported with little dissent. No doubt this requirement is sometimes in a measure oppressive, since the actual cost may exceed the pecuniary advantages to the lot owner; but this, in the case of police regulations, is never a conclusive objection." He says further, p. 615, that while sidewalks may be ordered constructed under the police power, they may also be constructed by means of special levies, and the expense apportioned by frontage.

Commenting on this, the Court of Appeals of Virginia says (Sands *v.* Richmond, 31 Gratt. 577), (1879): "Whether the learned author is correct in referring the improvement of the sidewalk by the owner to the police power, or whether it belongs to the taxing power, it is not material to discuss. It is a power exercised by the municipal authorities of perhaps three fourths of the cities of the United States under their respective charters; it is just and reasonable in itself, and, with a few exceptions, is approved by the whole current of decisions."

Chief Justice Beasley, whose strong expressions in the Tidewater case (3 C. E. Green, 18 N. J. Eq. 518) occupy several pages of the brief of the plaintiffs in error and are specially relied upon to establish the unconstitutionality of this act, expressly excepts from the rule there laid down assessments for sidewalks, which assessments he approves in the following language:

"A sidewalk has always, in the laws and usages of this State, been regarded as an appendage to and a part of the premises to which it is attached, and is so essen-

tial to the beneficial use of the premises that its improvement may well be regarded as a burthen belonging to the ownership of the land, and the order or requisition for such an improvement as a police regulation. On this ground I conceive it to be quite legitimate to direct it to be put in order at the sole expense of the owner of the property to which it is subservient and indispensable." State *ex rel.* Agens *v.* Mayor, etc. of Newark, 37 N. J. L. 423. See also State *v.* Fuller, 34 N. J. L. 227.

The Supreme Court of Tennessee, which has disallowed assessments for street improvements generally, as opposed to the constitution of that State, expressly excepts sidewalks (McBean *v.* Chandler, 9 Heisk, 349, 379), and places the authority to order their construction, or to construct them, upon the ground of police power. Mayor *v.* Mayberry, 6 Humph. 368; Washington *v.* Nashville, 1 Swan, 177. So likewise in Colorado, where assessments for street improvements generally are held unconstitutional. Palmer *v.* Way, 6 Col. 106; City of Pueblo *v.* Robinson, 21 Pac. 900; Wilson *v.* Chilcott, *Id.* 901. See also Goddard's case, 16 Pick. 505, s. c. 28 Am. Dec. 259; Inhabitants of Palmyra *v.* Morton, 25 Mo. 596; Woodbridge *v.* City of Detroit, 8 Mich. 309, 310; Town of Macon *v.* Patty, 57 Miss. 378, s. c. 34 Am. Rep. 473; Deblois *v.* Barker, 4 R. I. 445; Bonsall *v.* Town of Lebanon, 19 Ohio, 418; State *v.* City Council, 12 Rich. (S. C.), 733; Borough of Greensburg *v.* Young, 53 Pa. St. 280; O'Leary *v.* Sloo, 7 La. Ann. 25; White *v.* People, 44 Ill. 604 (reviewing and explaining 34 Ill. 203, and 40 Ill. 217); County of Hennepin *v.* Bartleson, 37 Minn. 343 (1887); City of Galveston *v.* Heard, 54 Tex. 427 (1881); Dillon on Municipal Corporations, §761, paragraph 6 (4 ed. 935), also §798; Burroughs Taxation, 494; Desty Taxation, 1354.

The limitations or restrictions which should attend

v 85-5

the exercise of this power as to sidewalks need not be gone into, for none such bear upon the present case. This is not a case of improvements ordered in outlying, uninhabited districts; for the act requires that "no assessment shall be made for constructing, grading, paving or otherwise improving sidewalks outside of the *fire-limits,* except as an extension of similar work already done or hereafter done within such fire-limits." As to the material to be used, it will not be contended that there was an abuse of discretion by the municipal authorities. So far from being of an extremely costly character, it was brick, probably the most usual and practicable material employed for this purpose; indeed, there is hardly anything cheaper, unless it be wooden planks, which from their inflammable nature might well be regarded as ill-adapted to use within the fire-limits, or for permanent improvements in adjacent districts likely to be brought within the fire-limits. In no aspect does the case present the plain and manifest abuse of legislative or municipal power and discretion held necessary to justify the interference of the courts, and which would bring it within the intimation of this court in the *Gate City Street Railroad* case, 80 *Ga. supra.*

As to the notice and hearing "appropriate to the nature of the case," ample provision is made by this act and the ordinances thereunder. In the first place, the lot-owner is notified by general ordinance, of which he, as a member of the corporation, it has been held, is bound to take notice. 25 Mo. 593, *supra;* 2 Dill. Mun. Corp. §804. Again, before a brick is laid, special notice is given him. The ordinance under which the improvement is directed requires this notice served upon the lot-owner, that he may have the opportunity to construct the sidewalk himself or have it constructed at h own prices for labor and material; and he is given irty days in which to do this. If he does not choose avail

himself of this privilege and the city constructs the side-walk, the ordinance requires that he be notified, by service of a bill of costs and expenses, of the amount with which he is charged; and an opportunity is afforded him to question its correctness. Finally, the act itself makes full provision for a hearing to the lot-owner as to every matter upon which he is entitled to be heard, by providing that if, upon his failure to pay, execution be issued against him, he may file an affidavit denying the whole or any part of the amount for which the execution issued, which affidavit is made returnable to the superior court to be tried and the issue determined as in cases of illegality. The property-owner is thus informed of the amount of the assessment, and a time, place and tribunal are provided at and before which a hearing may be had, before his property can be taken and sold. If the sidewalk is not made in conformity with the requirements of the ordinance; if he is charged an amount in excess of the proportion for which he is assessable, he may be heard in reference thereto. "He may show fraud, mistake, want of authority to support the assessment, or a failure to comply with the provisions of the statute. His constitutional rights are therefore fully protected. Whether the plan and system of local improvements as authorized and administered are the wisest, is a question to be addressed to the legislature." 37 Minn. 345, *supra.*

The following is a list of cases cited for the plaintiffs in error to illustrate what is meant by "due process of law": *Ex parte* Zibold, 20 C. L. J. (imprisonment for contempt); 30 Wisc. 129 (murder case); 13 N. Y. 393 (liquor case); 4 Wheat, 235 (summary process in favor of bank against debtors on notes, etc.); 100 U. S. 346 (indictment against county judge for excluding negroes from jury lists); 63 Ala. 547 (trover for conversion of city bonds); 2 Tex. 251 (summary

judgments on bonds); 12 N. Y. 209 (legislative inter-
ference with husband's vested rights); 2 Peters, 658
(legislative act confirming private sale) ; 13 Wall. 662
(legislative interference with vested rights) ; 11 Minn.
480 (limitation act as to time of attacking tax
sales) ; 4 McLean, 586 ; 95 U. S. 714; 10 Ga. 580
(suits between private parties relating wholly to private
rights) ; 1 Chand. 71 (erection of mill-dams within power
of legislature, and parties injured have only such remedy
as the statute may prescribe) ; 96 U. S. 107.

It will be seen that, with but one exception (Davidson
v. New Orleans, 96 U. S. 107), these cases do not relate
to assessments or the exercise of the taxing power. So
far as they show that a hearing is requisite, they are
unnecessary, for in the present case a hearing is pro-
vided for ; and so far as concerns the questions to which
that hearing should extend, they illustrate nothing as to
cases of this character. Nor does the Davidson case aid
the plaintiffs in error. In that case it was held that the
act did provide for due process of law, and the assess-
ment was sustained. The court says : "This court has
heretofore decided that 'due process of law' does not in
all cases require a resort to the courts to assert the
rights of the public against the individual, or to impose
burdens upon his property for the public use" ; and Mr.
Justice Miller lays down the following rule : "When-
ever by the laws of a State or by State authority, a tax,
assessment, servitude or other burden is imposed upon
property for the public use, whether it be for the whole
State or of some more limited portion of the commu-
nity, and these laws provide for a mode of confirming or
contesting the charge thus imposed, in the ordinary
courts of justice, with such notice to the person or such
proceedings in regard to the property as is appropriate
to the nature of the case, the judgment in such proceed-
ing cannot be said to deprive the owner of his property

without due process of law." As we have already shown, the act under consideration in the present case comes fully up to this rule.

Much of the argument addressed to this court was devoted to the evils and hardships incident to the power of assessment, and the very elaborate brief for the plaintiffs in error concludes with the language of Chief Justice Church in Guest *v.* City of Brooklyn, 69 N. Y. 506, in which these evils are strongly condemned. But the reply, so far as the courts are concerned, is to be found in that decision itself; and we conclude by quoting from the same opinion: "The effective remedy is not with the judiciary. Whatever our individual views may be of the policy, we are obliged to maintain established rules of law, and to restrain our own power within prescribed limits, as well as to enforce restrictions upon other departments of government. We should regard a departure by the courts from rules of law wisely established for the protection of all, to meet the equities of a particular case or class of cases, as a far greater evil than that sought to be remedied. Courts can confine the legislature within constitutional authority; and when questions are legitimately up, can and do exact a strict compliance with all the requirements of law leading to a forcible taking of the property of the citizen, but beyond this they have no discretion, and are themselves bound to observe and enforce legislative provisions, whether they approve them or not. The only effective remedy is with the legislative department of the government." *Judgment affirmed.*