## GEORGIA RAILROAD AND BANKING COMPANY *v.* TOWN OF DECATUR, and *vice versa.*

1. A railroad company owns a strip of land in a municipality, 116 feet feet wide, through the centre of which runs its main line of railroad. The land is located between two streets of the town, along which the town under legislative authority, laid respectively 4,456 and 938 feet of sanitary sewer pipe. The land is held for present use to support

the road-bed and to provide for an increase of tracks, which the future needs of the railroad probably may require. Under such circumstances the land abutting on the sewers, of such depth as will not interfere with the present road-bed, is liable for the cost of assessment of the local improvement, and such assessment is not illegal because the abutting property in its present condition, and as devoted to its present use, may not be specifically benefited by the improvement.

2. Under its amended charter (Acts 1903, p. 504) the Town of Decatur was authorized to construct a system of sewerage and to assess against abutting property on each side of a street improved fifty cents per lineal foot. The legislative determination of the cost of the local public improvement and its apportionment to the abutting land is conclusive as to these matters.

3. In the absence of express legislative authority, the main track of a railroad company is not subject to levy and sale to satisfy a lien for assessments for local improvements. It follows that an execution for assessments issued against a lot of land bisected by the main track of a railroad is not liable in solido for improvements on two streets which bound the lot of land and between which the main track is located; and therefore a portion of the land on one side of the railroad track can not be levied on to satisfy assessments made against the entire strip of land through which the railway runs, on account of sewers constructed in streets lying on each side of the track.

FEBRUARY 14, 1912.

Illegality of execution. Before Judge Roan. DeKalb superior court. September 16, 1910.

*Joseph B. & Bryan Cumming* and *John S. Candler,* for the railroad company.

*Mayson & Johnson* and *Leslie J. Steele,* contra.

EVANS, P. J. By an act approved July 30, 1903, the charter of the Town of Decatur was so amended as to authorize the construction of a system of sewerage for that town. The caption and first section of the act are as follows: " An act to amend the charter of the Town of Decatur, in the county of DeKalb, so as to authorize the mayor and council of said town to construct a system of sewerage for said town, and to assess the cost of constructing said sewerage system against the abutting property, or the property through which said sewer may be constructed, and against the owners thereof, and for other purposes. Section 1. Be it enacted by the General Assembly of the State of Georgia, and it is hereby enacted by the authority aforesaid, That from and after the passage of this act the mayor and council of the Town of Decatur, in the County of DeKalb, shall have full power and authority to lay down and

construct sewers in said town, and to assess the sum of fifty cents per lineal foot upon the property and estates respectively abutting on said sewer on each side of the street along which said sewer is laid or constructed; and in consideration of the payment of said assessment, the owners of said estates shall have the right to connect their drains from said abutting property for the discharge of sewerage into said sewer; and in case any such sewer is laid down or constructed through or on any private property, along the course of any natural drain or otherwise, a like sum of fifty cents shall be assessed upon such property abutting on each side of said sewer for every lineal foot, making, in all one dollar for every lineal foot to be assessed upon such property through which sewers are constructed as aforesaid; provided, that when the same party owns the land on both sides of a sewer running through his land, he shall be assessed only for one side thereof; and in consideration of the payment of said assessment, the owners of real estate, respectively, on each side of said sewer, through or over which such sewer may be constructed, shall have the right to connect their drain from said abutting property for the discharge of sewerage into said sewer. The extent and character, material used, and expense of sewers constructed, as well as the time and manner of constructing the same, shall be in the discretion of the mayor and council of said town, to be prescribed from time to time by ordinance. The remaining cost of all sewers not thus assessed shall be paid by said mayor and council from the treasury of said town." The Georgia Railroad and Banking Company owns a lot of land in the town, lying between College Street and Railroad Avenue 116 feet in width, along the centre of which is constructed its main line of railroad track. The town constructed a line of sewerage pipes in front of this property on College Street 4,456 feet, and a line of sewerage pipes 938 feet on Railroad Avenue. For the construction of this sewer the railroad's property was assessed forty cents for each lineal foot the sewer pipe was laid. An execution was issued against the property in solido for the aggregate sum. This execution was levied upon a rectangular strip of the land 30 by 912 feet, lying on one side of the railroad track. The railroad company interposed its affidavit of illegality; and on demurrer all grounds of the affidavit, except such as set up that the cost of the work as constructed was less than the amount assessed,

were stricken. The case was tried by the judge without the intervention of a jury. He adjudged the railroad company subject to one half of the amount assessed against its property. The company and the town sued out bills of exceptions.

Though assessments for local improvements are not taxes within the meaning of the requirement of the constitution that taxes must be ad valorem and uniform, nevertheless assessments for local improvements, such as street paving and sewerage, are an exercise of the taxing power. While assessments for sewerage are primarily referable to the taxing power, they also have in many instances the aspects of police regulations. It is competent for the legislature to authorize the construction of a sewerage system in a municipality and to determine how the cost shall be borne as between the public and the property to be benefited. The legislature may fix some definite standard of apportionment of costs to be applied to the property abutting on the improvement by a measurement of length, quantity, or value. "Benefit to the owner of the real estate assessed, so far as necessary to be passed upon, as well as the necessity or reasonableness of the improvement, being for the determination of the legislature, is concluded by the act authorizing the assessment, and will not be inquired into by the courts unless in extraordinary cases, presenting a manifest abuse of legislative authority." *Speer* v. *Athens,* 85 *Ga.* 49 (11 S. E. 802, 9 L. R. A. 402) ; *Bacon* v. *Savannah,* 86 *Ga.* 301 (12 S. E. 580). The foregoing principles were elaborately considered in the cited cases, and we need only apply them to the questions presented by the affidavit of illegality.

1.  The first of these raises the point that a local assessment for a sanitary sewer can not be levied against a railroad right of way. The argument is advanced in support of this contention that a sanitary sewer alongside a right of way of a railroad, from the nature of things, can not be of benefit to the railroad, and comes within the exception to the rule referred to in the *Speer* case and applied in the case of *City of Atlanta* v. *Hanlein,* 96 *Ga.* 381 (23 S. E. 408), and 101 *Ga.* 697 (29 S. E. 14). In the latter case the property against which a paving assessment was made was, in consequence of its peculiar shape and situation, not worth more after than before the improvement, and the cost of the improvement largely exceeded the value of the lot; and under such cir-

cumstances the process to enforce the collection of the assessment was enjoined, because it virtually amounted to a confiscation of the property. The case in hand does not come within the exception to the rule referred to in the *Speer* case and illustrated by the *Hanlein* case. The railroad land which abuts on the improvement is 116 feet wide and located between two streets; and although it is stated in the affidavit of illegality that its present use is for the maintenance of the road-bed and that future needs of the company shall probably require all of it for additional tracks, it does not appear that the railroad company may not now put it to some accessorial use, such as leasing it for warehouse and business purposes. The railroad company does not present a case of confiscation; its contention is but an inference drawn that it will derive no benefit from the improvement. It may be that from the present use to which the property is put no special benefit may result; but as all of the abutting property is not actually required for the support of the road-bed and may be used for warehouse or other business purposes, we can not say that no special benefit will ensue. As was said by Mr. Justice Holmes: "There is a look of logic when it is said that special assessments are founded on special benefits, and that a law which makes it possible to assess beyond the amount of the special benefit attempts to rise above its source. But that mode of argument assumes an exactness in the premises which does not exist. The foundation of this familiar form of taxation is a question of theory. The amount of benefit which an improvement will confer upon particular land, indeed whether it is a benefit at all, is a matter of forecast and estimate. In its general aspects at least it is peculiarly a thing to be decided by those who make the law." L. & N. R. Co. *v.* Barber Asphalt Paving Co., 197 U. S. 433 (25 Sup. Ct. 466, 49 L. ed. 819). See, in this connection, Chicago etc. Ry. Co. *v.* City of Janesville, 137 Wis. 7 (118 N. W. 182), and valuable note to this case in 28 L. R. A. (N. S.) 1124.

2. The railroad company contends that under the act providing for the construction of the sewerage system the cost of the improvement must be limited to costs actually incurred in front of the property. Learned counsel for the railroad company conceded on the argument that the legislature could embrace, as a part of the cost to be assessed on the abutting property owner, not only the

cost of providing and laying the sewer, but also the cost of all other things that went to make up a complete sewerage system; but it was contended that under the special act the legislature did not make such provision. The caption and the first section of the act are set out in the statement of facts; and we think the legislative intent, as expressed from the language of the act, is to authorize the construction of a sewerage system in the Town of Decatur at a cost of fifty cents per lineal foot of the land abutting on each side of the improvement, and that the additional cost shall be paid by the town. It was competent for the legislature to estimate the cost of the improvement, and to fix the frontage assessment. As was said by the Supreme Court of the United States: "The legislature determines expenditures and amounts to be raised for their payment, the whole discussion and all questions of prudence and propriety and justice being confined to its discretion. It may err, but the courts can not review its discretion." French *v.* Barber Asphalt Company, 181 U. S. 324 (21 Sup. Ct. 625, 45 L. ed. 879). The legislature having determined that the cost be apportioned to the abutting land on each side of the improvement, the owners of the land have no cause for complaint that the town, upon discovering that it could construct the improvement for a smaller sum, assessed the abutting land at a sum less than that fixed by the statute. It would have been competent for the town to assess the improvement at one dollar per lineal foot, fifty cents of it to be paid by the landowners on each side; and the landowner can not complain that the town voluntarily reduced the assessment to forty cents per foot against each abutting tract of land.

3. The .fi. fa. ran against the entire property abutting on the improvement, but was levied on a part of it. It was urged, as a ground of illegality, that the fi. fa., being a special lien against the property along which the sewer was laid, could not be levied for the whole amount upon a selected part. The affidavit of illegality alleges that the defendant owns a strip of land between College Street and Railroad Avenue, 116 feet in width, along the centre of which is constructed its main line of railroad track, and that its present use is to give a sufficient right of way for the proper maintenance of the present road-bed and to provide for increase in the number of tracks as the business of the defendant may require in

the future. A majority of the authorities are to the effect that the track, rails, and ties of a railroad company can not be sold by piecemeal, in the absence of express legislative permission. The reason of the rule is that a railroad company is a quasi public institution, and owes a duty to the public to discharge the objects of its franchise, and a compulsory sale of a fragment of its track will prevent its discharge of this duty. Gray on Limitations of Taxing Power, § 1190; *City of Atlanta* v. *Grant, 57 Ga.* 340. Only so much of the right of way as is essential to the discharge of its present obligations comes within the operation of the principle. A railroad company by extensive purchase of real estate for future needs can not defeat the sale of such real estate under a valid assessment against so much of the right of way as is not necessary for the present maintenance of its road-bed. We think, therefore, that the assessment should have been against the abutting land of such depth as not to interfere with the road-bed, and the land on each side of the track should have been assessed for the abutting improvement. That is to say, the abutting land on College Street, alongside of which is laid 4,456 feet of sewerage, should be assessed forty cents per foot, and the abutting land on Railroad Avenue, alongside of which 938 feet of sewerage is laid, should be assessed forty cents per lineal foot. Separate fi. fas. should be issued for each assessment running against the property abutting on the improvement.

We are not informed by the affidavit of illegality whether the property assessed contains warehouses or depots. If the right of way contains such structures and is put to such uses, it is assessable and liable for the local improvement abutting the same. Chicago etc. R. Co. *v.* Ottumwa, 112 Iowa, 300 (83 N. W. 1074, 51 L. R. A. 763).

As the assessment was made against and levied upon the whole lot which was bisected by the railroad track, it follows that the illegality should have been sustained on the ground stated in this division of the opinion.

*Judgment reversed on both bills of exceptions. All the Justices concur, except Hill, J., not presiding.*