Bacon *v.* The Mayor and Aldermen of Savannah.

1. Where the same statute which confers authority for issuing an execution to enforce the payment of an assessment made upon abutting property to defray the cost of improving the street on which such property abuts, provides that the defendant shall have the right to file an affidavit denying that the whole or any part of the amount for which the execution issued is due, an affidavit which in one of its grounds sets forth such a denial in express terms as to the whole and every part, entitles the defendant to a trial upon all questions of law and all open questions of fact involved in the controversy.

2. The constitutional questions raised by the special grounds in the affidavit filed in this case are virtually decided by *Speer* v. *Athens*, 85 *Ga.* 49, and the authorities therein referred to.

3. A statutory power to improve any of the streets or any portion of the width of any street in the city, includes the power to improve either the whole or less than the whole of any street. One street

may be divided into two sections, and one section improved with a double, the other with a single paved track. The property abutting on each section may be separately assessed for the cost of improving the section to which it belongs. For this purpose each section may be treated as a street.

4. Authority to grade, pave, macadamize or otherwise improve for travel or drainage, is broad enough to comprehend all work and materials embraced in the assessment now in question.

5. Though the statute conferring power to improve the streets contemplates that the power shall not be exercised until after the adoption of an ordinance by a two thirds vote of the municipal body, requiring the improvement to be made and assessing two thirds of the cost thereof on the real estate abutting on each side of the street improved, the ordinance itself need not specify or designate the materials or the kind of materials to be used in paving the street. The choice of materials may be made after the adoption of the ordinance, and by resolution or otherwise as the ordinance may provide.

6. Though the statute certainly contemplates that the tracks of street-railroads and a space of two feet on either side thereof shall be paved or macadamized by the companies at their own expense, and abutting owners cannot be required to contribute to the cost thereof, yet a broad street may well admit of general improvement as a system separate and distinct from the macadamizing or paving of the street-railroads located thereon. Where this is so, abutting owners may be required to contribute their proper part to defray the cost of general improvement, whether the special improvement required of railroad companies be made or not.

7. The statute requires no assessment to be made by ordinance save that which fixes the proportion of cost to be paid by the city as a municipality and by abutting owners respectively. Nor does it require preliminary estimates of amounts, or that amounts be otherwise ascertained and fixed by the ordinance. As the ordinance places the execution of its provisions in the hands of the committee on streets and lanes, the ministerial duties of that committee would include the auditing of bills and ascertaining the actual cost of the work; also, the measurement of frontage and the apportionment of two thirds of the whole cost amongst the several abutting owners according to the frontage of each. The legality and accuracy of these ministerial acts are open to question on a general affidavit of illegality to the execution.

8. Where the statute authorizes the city government "to assess two thirds of the cost . . on the real estate abutting on each side of the street or lane improved," and requires " the frontage " of intersecting streets and lanes to be assessed as real estate abutting on the street improved, the assessment may be apportioned amongst the several property-owners by frontage alone, without

reference to the depth, superficial area or estimated value of the various parcels of abutting property.

9. The statute requiring the frontage of intersecting streets and lanes to be assessed as real estate, and that the mayor and aldermen shall be treated as owner and pay from the city treasury the just *pro rata* of cost for and according to said frontage, the cost of improving intersections is not to be dealt with separately, paid by the city and deducted from the total cost, but is to be included in such total cost when the apportionment is made amongst the various property-owners, and the city is to be charged just as any other owner with its *pro rata* share of the total cost according to frontage.

10. No part of a street fronts on the street of which it is a part. The intervening space between two paved tracks in the same street is no intersection, nor has the city any ownership of the same different from its ownership of the whole breadth of the street. The city is not chargeable with the margins of this intervening space as frontage.

11. The execution is not invalid because it purports on its face to issue for "proportion of the cost of paving or otherwise improving Liberty street in said city with asphalt in front of and abutting on the said real estate." The real estate must abut on the street, if the street is in front of and abutting on the real estate. .

12. The words "time, place and manner of sale" do not embrace the newspaper in which the sale is to be advertised. Consequently §3656(a) of the code does not require that sales for municipal taxes shall be advertised in the same newspaper in which sheriff's sales for city and county taxes are advertised.

December 10, 1890..

Illegality. Statutes. Municipal corporations. Streets. Assessments. Constitutional law. Before Judge FALLIGANT. Chatham superior court. June term, 1890.

Bacon interposed an affidavit of illegality to the levy of an execution against him issued by the city for the amount assessed against him for his proportion of the cost of paving, grading and otherwise improving Liberty street with asphalt in front of and abutting on his real estate. For the present report, the grounds of this affidavit are sufficiently indicated in the decision. A motion to dismiss the affidavit, on the ground that it contained nothing constituting any defence to proceeding with the execution, was sustained, and Bacon excepted.

R. R. Richards and J. R. Saussy, for plaintiff in error.

S. B. Adams, *contra*.

Bleckley, Chief Justice.

1. The ordinance for improving Liberty street rests directly on the act of 1887, but the remedy by execution for enforcing the assessments made on abutting property is derived from the act of 1885. See Acts of 1887, p. 537 ; Acts of 1884–5, p. 362. From the terms of the 5th section of the later act it would seem that the provisions of the earlier act in relation to remedy were intended to be brought forward and made applicable to improvements authorized by the later act itself, or rather, by any ordinance passed in pursuance of the authority which it confers on the municipal government. Of course, if the act of 1885 is good for issuing execution without suit, it is also good for the defensive means which it lays down to resist the execution. Touching these means, it says expressly " that the defendant shall have the right to file an affidavit denying that the whole or any part of the amount for which the execution issued is due." In the present case the 17th ground of the affidavit of illegality is in these words : "The amount for which said execution is proceeding is not due and payable by the said real estate or by this defendant as the owner thereof, nor is any part of said amount due or payable by the said real estate or by this defendant as the owner thereof." It is manifest that the affidavit conforms to the statute and is such as to entitle the affiant to a trial upon all questions of law and all open questions of fact involved in the controversy. *Speer* v. *Athens*, 85 *Ga.* 49, 11 S. E. Rep. 802. Inasmuch as the motion to dismiss the affidavit of illegality went to the whole affidavit, not being restricted to any one or more of the specific grounds set forth, the court erred in sustaining the motion. This is all that is absolutely necessary to decide on the writ

of error now before us; but upon some of the special questions made in the affidavit and argued at the bar we will indicate our opinion, as these questions will necessarily arise upon the trial of the broad issue which the affidavit presents.

2. In spirit and principle the constitutional questions are virtually decided by *Speer* v. *Athens, supra,* and the authorities to which the opinion in that case refers. And see Mayor of Birmingham *v.* Klein (Ala.) and notes, 8 Lawyer's Reports, 369.

3. The power given by the act of 1887 to improve any of the streets, or any portion of the width of any street in the city, includes the power to improve either the whole or less than the whole of any street.   2 Dil. M. C. §799.   In the exercise of this power it was competent for the proper municipal authorities to divide Liberty street into two sections and improve one of them with a double, and the other with a single paved track; and in assessing abutting property to defray the cost of the improvement, it would be obviously just and equitable to treat each section as though it were a separate street.   The consequence would be that the property abutting on the double-track section would pay at the rate of cost of that section, and property abutting on the single-track section would pay at the rate of cost for it alone, that rate being less than the former. We discover no infirmity in the apportionment actually made with reference to this special feature in the improvement of Liberty street.

4. The letter of the authority conferred by the act of 1887 embraces "grading, paving, macadamizing or otherwise improving for travel or drainage."   This language is broad enough to comprehend all the work included in the assessment and proper materials therefor, as set forth in the statement of cost annexed to the affidavit of illegality and marked "B."   We see noth-

ing in that statement which might not fairly be con-
nected with grading, paving, macadamizing or other-
wise improving for travel or drainage the street in
question.

5. The ordinance, which by the first section of the
act requires a vote of two thirds of the municipal body
for its adoption, need not comprehend more than a re-
quirement that the street be improved in the manner
designated and that two thirds of the cost thereof be
assessed upon the real estate abutting on each side.
There is no express provision that the kind of materials
used or to be used shall be fixed or described by that
ordinance, nor is a two thirds vote made requisite to
pass any other ordinance, resolution or order touching
the subject of improving streets. We are of opinion,
therefore, that it was competent to leave the question
of materials to be determined by a resolution of the
municipal body adopted, not by a two thirds vote, but
a majority vote only, that is, a majority of a quorum in
attendance, the number sufficient in ordinary acts of
municipal legislation. A good reason for not fixing the
material by the main ordinance, might be that inquiry
and investigation into the matter of cost would probably
be incomplete when the ordinance was passed. The
making of bids, etc. would necessarily come after the pas-
sage of the ordinance, and it might be desirable to
invite bidding based on different kinds of material, and
thus leave the particular kind to be used for future
determination dependent on the amount of the bids
respectively.

But it is enough to say that the legislature has not
in terms exacted that the ordinance to be passed by a
two thirds' vote shall specify anything with regard to
materials. That ordinance, as actually passed and
adopted, provides in substance that the street be paved
with such material as council thereafter, by resolution

adopted by a two thirds vote of the members present, might prescribe. There is no suggestion that the resolution contemplated was not passed in due time and manner, and if it was and the work was done accordingly, we would consider that sufficient.

6. The act certainly contemplates that street-railroad companies having tracks running through any street improved, should be required to macadamize or otherwise pave the railway track and two feet on either side thereof, at their own expense. But this, we apprehend, is chiefly to relieve the municipality and the abutting owners from defraying any portion of the cost incident to this part of street improvement. The question admits of some doubt, but we think the better construction is, that the power to improve a street generally and assess abutting property is not suspended upon the enforcement of the provision touching street-railroads as a condition of otherwise improving the street. By showing good cause, an abutting owner may have the right to compel the city council by *mandamus* to execute the provisions of the act against street-railroad companies. But a broad street, such as Liberty street seems to be, may well admit of general improvement as a system separate and distinct from the macadamizing and paving of the street-railroads located thereon. If this be so, it should be no proper answer by abutting owners, when called upon to contribute their proper part to defray the cost of the general improvement, that the special improvement provided for by the act and confined to street-railroads and two feet on each side thereof has not been made. Certainly the abutting owners cannot be assessed for any part of the cost of such special improvement whether made or not, and it would seem from the record that no part of such cost has in this instance been so assessed in arriving ultimately at amounts chargeable to abutting owners. As

the ordinance only requires the companies to pave between their tracks, it may be that it does, by implication, leave abutting owners exposed to assessment for two feet space on either side. But if so, there seems to be no attempt to execute this part of the ordinance, if we correctly understand the various entries and items of calculation in the statement marked exhibit B above referred to. This question, however, is open for determination as matter of fact.

7. It seems to us that the ordinance goes as far in the matter of assessment as the act requires it to go. It fixes the proportion of the cost to be paid by the city and the abutting owners respectively. The act does not require that any preliminary estimates should be made of amounts, or that amounts should otherwise be ascertained and fixed by the ordinance. It would be altogether impracticable to arrive at the actual cost in time to express it in the ordinance. We see in the act itself no purpose or intention that this should be done. The ordinance places the execution of its provisions in the hands of the committee on streets and lanes, this committee, as we understand the record, being composed of members of the city council. It would devolve, therefore, upon the committee to audit bills and ascertain the actual cost of the work; also to measure the frontage of each property-owner and to apportion two thirds of the whole cost amongst such owners according to the frontage of each owner respectively. These would be ministerial acts in execution of the law of assessment established by the ordinance in virtue of the statutory authority conferred by the legislature. If these ministerial acts were not performed rightly or accurately, they would be open to question by the abutting owners respectively, on such an affidavit as has been filed in this case. None of them, therefore, would be binding on the citizen in a conclusive way, until

after he had had a hearing and an adjudication touching their legality and accuracy.

8. The act by implication authorizes, and the ordinance prescribes apportionment according to lineal frontage on the street improved, and without any reference to the depth, superficial area or estimated value of the various parcels of abutting property. The language of the act is, "and to assess two thirds of the cost . . on the real estate abutting on each side of the street or lane improved." The ordinance makes the assessment and requires it to be apportioned "according to frontage." It has been held that a city charter which required "the assessors to assess each lot deemed to be benefited 'in proportion to the benefits they deem it to receive'," is well-executed where the assessment was actually made on the lots in proportion to their frontage, notwithstanding some of them had valuable buildings, others had buildings of inferior value and many were vacant. O'Reilly *v.* Kingston, 39 Hun, 285. Moreover, the act of 1885, *supra*, expressly recognizes frontage on the street or portion of the street improved as a right basis for apportioning the cost. And the act of 1887 requires "the frontage" of intersecting streets and lanes to be assessed as real estate abutting on the street improved. This of itself shows that the basis of apportionment as to all abutting property was to be "frontage" as the ordinance prescribes touching the real estate of private owners.

9. With regard to intersections, the act of 1887 declares: "The frontage of intersecting streets and lanes shall be assessed as real estate abutting upon the street paved or otherwise improved, and the mayor and aldermen shall be, for all the intents and purposes of this act, an owner or legal representative of real estate abutting on any street, shall possess the same rights and privileges as all other owners of real estate abutting on any street according to the frontage owned, and shall

pay from the city treasury the just *pro rata* of the entire cost of said work for the said frontage."

We think the proper construction of this language is, that the city, as owner, is to be rated just as any other abutting owner; that is, the intersecting streets and alleys are to be considered as if they were private property. A private abutting owner is not chargeable separately on the basis of cost for improving in front of his own premises, but is chargeable with his *pro rata* share, according to his frontage, of the total cost of improving the street, or that section of the street on which his property abuts : so likewise, the city, as owner, must pay its *pro rata* share of such total cost. Improving the intersections may be more or less expensive than improving a like area in extent elsewhere in the street, but whether more or less, its cost is not to be deducted from the general aggregate before making the apportionment amongst the several property-owners, but is to remain a part of such aggregate, and the city be charged with its *pro rata* of the whole according to frontage just as any private owner is charged with his *pro rata*. The whole cost is to be apportioned and the city, as owner, is to share in the apportionment of the whole. As a municipality it pays one third, and as owner its *pro rata* according to frontage of the other two thirds. The ordinance seems to exclude the city altogether from apportionment as owner, its language being : "After the total cost of said work, exclusive of the frontage of intersecting streets and the work done for said railway companies, shall have been ascertained, one third of such cost shall be paid out of the city treasury and the other two thirds from the persons owning real estate fronting on said portions of Liberty street." In this respect the ordinance departs from the act ; and of course the act must be followed rather than the ordinance in ascertaining the amount to be contrib-

uted by each abutting owner. As the act speaks in express terms on this subject, this part of the ordinance may perhaps be treated not only as void but as surplusage, but no abutting owner can be compelled to pay any excess with which he may have been charged on account of excluding the city, as owner, from sharing in the due apportionment of total cost.

10. There is no merit in the suggestion that the city is to be chargeable as owner of the intervening space between the two paved tracks on that section of the street thus improved. This space is no intersection, nor has the city any ownership of it different from its ownership of the whole breadth of Liberty street. Whether it is actually used as a part of the highway or thoroughfare makes no difference. The act gives authority to improve the whole breadth of the street or less than the whole, and in either case two thirds of the cost is to be borne by abutting owners, including the the city as owner of the intersections. The city, like other owners, is to be charged on the basis of frontage, and surely no part of a street can properly be said to front on the street of which it forms a part. The act of 1887 treats intersecting streets as fronting on the street improved, and for this purpose makes the two external margins of the latter street solid and continuous throughout the section improved, but it makes no reference to internal margins as fronts or having frontage.

11. That the execution on its face purports to issue for "proportion of the cost of paving or otherwise improving Liberty street in said city with asphalt in front of and abutting on the said real estate," does not render it invalid. It would have been more accurate to say that the real estate described in the execution and upon which the levy was made fronts and abuts on the street. But this must necessarily be true if the street, as the

execution says, is in front of and abutting on the said real estate. The language quoted above does not, as the affidavit of illegality seems to suggest, import that the abutting owner is charged with his proportion of the cost of paving, etc. immediately in front of his own property, and not with his *pro rata* share of the aggregate cost. We have already seen that that aggregate need not include both sections of the street, they being differently improved, but is and should be a separate aggregate for the double-track section, the same being the section on which this particular property is located.

12. There is no merit in that ground of the affidavit of illegality which sets up that the execution sale would be illegal because not advertised in the newspaper in which the sheriff''s sales of the county are advertised. The code, §3656(a), relates to the time, place and manner of sale, and neither expressly nor by implication refers to the newspaper in which sales are to be advertised.

If any of the thirty-five grounds, with or without their subdivisions of *a, b, c,* etc., are not covered substantially by what has been said above, we are to be understood as holding them insufficient in and of themselves to arrest the progress of the execution. But as the affidavit contains at least one ground which is sufficient, and which is broad enough to include all other sufficient grounds, whether specifically set forth or not, the court erred in dismissing the affidavit.

*Judgment reversed.*