8324. DIXON *v.* MAYOR AND ALDERMEN OF SAVANNAH.

1. Where an execution is levied upon property in the City of Savannah for its proportionate part of the cost of the paving of a street upon which it abuts, and the owner of the property interposes an affidavit of illegality which recites merely "that the execution [describing it] is illegal, and that the whole of the amount of $93.93 stated in the execution is not due, and the deponent denies that any part of it is due; wherefore deponent makes this affidavit, that the same shall be returned to the superior court of Chatham county and there tried and the issue determined as in case of illegality," the affidavit, when returned to the superior court, is not subject to a general demurrer or an oral motion to dismiss, but is not good as against a timely special demurrer which sets forth that the affidavit "does not allege any facts to show why the said execution is illegal, nor why the amount of the same is not due, either in whole or in part."

2. The court did not err in sustaining the special demurrer interposed to the affidavit of illegality as amended, and in dismissing the affidavit.

DECIDED AUGUST 2, 1917.

Affidavit of illegality; from Chatham superior court—Judge Kent presiding. December 16, 1916.

*Osborne, Lawrence & Abrahams,* for plaintiff in error.

*R. J. Travis, D. S. Atkinson,* contra.

BROYLES, P. J. The Mayor and Aldermen of the City of Savannah levied an execution upon the property of Mrs. Dixon for her proportionate part of the cost of the pavement of a certain street in the city upon which the property abutted. To this execution and levy the defendant interposed the following affidavit of illegality: "Personally appeared before me Mrs. Jessie Dixon, who upon oath says that the execution levied by the Mayor and Aldermen of the City of Savannah, through George D. Semken, Esq., the city marshal, upon the triangular lot at the intersection of West Boundary, Gwinnett and Roberts streets, is illegal, and that the whole of the amount of $93.93 stated in said execution is not due, and deponent denies that any part of said amount is due.

"For further cause of illegality deponent says that the paving assessed against said property was done without cost to the city, the cobblestones with which it was paved having been taken from Wheaton street, where they were condemned by the city, and the labor of laying the pavement having been performed by regular hands regularly in the employ of the Mayor and Aldermen of the City of Savannah.

"Deponent further says that the amount assessed against said property for said paving is altogether out of proportion to the benefits of the property and amounts to practical confiscation. The city has assessed the value of said lot of land at $200, or nearly one half the value of the property. If West Boundary street and Roberts street be paved at the same cost per front foot, the city will take more from deponent than the value of the property, without consequential improvement proportionate to the cost.

"For further cause of illegality deponent says that the assessment is wholly unequal as between different lot-owners; that deponent's property is a triangle having a base of 56.48 feet on Gwinnett street and an altitude of 56.68 feet on West Boundary, and a hypothenuse of 80.24 feet on Roberts street, so that at the apex of the angle between Roberts street and Gwinnett street deponent is required to pay a full frontage without any depth of property to be benefited, and the lot is so small and has such little

depth for the greatest part of the way that the cost of paving is altogether out of proportion to the values of the property and is entirely unequal in the distribution between deponent and other property owners.

"For further cause of illegality deponent says that the mayor and aldermen have charged and settled with other property holders, to wit, E. W. Bell, for fifty per cent. of the assessment made, so that if deponent be required to pay said tax execution the burden will be placed unequally upon her.

"Wherefore, deponent makes this affidavit that the same shall be returned to the superior court of Chatham county and there tried and the issue determined as in case of illegality."

The city filed a demurrer on the following grounds:

"1st. Because the said affidavit of illegality is not sufficient in law.

"2d. Because the affidavit of illegality states the following conclusion: 'The whole amount of $93.93 stated in said execution is not due, and denies that any part of said amount is due.' No facts are stated in the affidavit of illegality upon which to base this conclusion, which, in view of the facts alleged, is vague, uncertain, and ambiguous, and plaintiff moves to strike the same.

"3d. Plaintiff demurs to the 2d paragraph of the affidavit of illegality, which states the following: 'For further cause of illegality deponent says that the paving assessed against said property was done without cost to the city, the cobblestones with which it was paved having been taken from Wheaton street, where they were condemned by the city, and the labor of laying the pavement having been performed by regular hands regularly in the employ of the Mayor and Aldermen of the City of Savannah.' Plaintiff says that the said paragraph does not allege affirmatively that the cobblestones were of no value, that it does not show that the city was not put to an expense in removing the cobblestones from Wheaton street to the point where it was laid opposite defendant's property, and that the labor used in laying the pavement was not paid for by the city, and of cost to the city. Plaintiff shows, from the facts alleged in the illegality, it will follow, by necessary implication, that the pavement was laid at cost to the city.

"4th. Plaintiff demurs to the 3d paragraph of the affidavit of illegality wherein it is alleged that the city has assessed the value

33

of said lot of land at $200.00. Plaintiff says that neither said paragraph nor said illegality alleges the real value of said lot of land.

"5th. Plaintiff demurs to that portion of said 3d paragraph wherein it is alleged that, 'if West Boundary and Roberts street be paved at the same cost per front foot, the city will take more from deponent than the value of the property, without consequential improvement proportionate to the cost.' Said illegality does not show: (*a*) that the city contemplates improving West Boundary or Roberts street; or (*b*) that the city will ever improve West Boundary or Roberts street. Further demurring to said portion of said illegality plaintiff says the improvement of West Boundary or Roberts street would not affect this execution, and the allegation is immaterial and irrelevant. Plaintiff says that the excerpt here quoted should be stricken.

"6th. Plaintiff demurs to the 4th paragraph of the affidavit of illegality, wherein it is alleged, 'that the assessment is wholly unequal as between different lot-owners; that deponent's property is a triangle having a base of 56.48 feet on Gwinnett street and an altitude of 56.68 feet on West Boundary, and a hypothenuse of 80.24 feet on Roberts street, so that at the apex of the angle between Roberts street and Gwinnett street deponent is required to pay a full frontage without any depth of property to be benefited, and the lot is so small and has such little depth for the greatest part of the way that the cost of paving is altogether out of proportion to the values of the property and is entirely unequal in the distribution between deponent and other property owners.' Plaintiff says that the statement of facts alleged in said paragraph furnishes no ground of illegality sufficient in law to sustain his case, and moves that the same be stricken.

"7th. Plaintiff demurs to the 5th paragraph of said petition, wherein it is alleged as follows: 'For further cause of illegality deponent says that the mayor and aldermen have charged and settled with other property holders, to wit, E. W. Bell, for fifty per cent. of the assessment made, so that if deponent is required to pay said tax execution the burden will be placed unequally upon her.' Plaintiff says that said paragraph is immaterial, irrelevant, and furnishes no ground of illegality, and prays that the same be stricken."

On the hearing of the case before the superior court the defendant in fi. fa. filed the following amendment: "And now comes the defendant and amends her affidavit of illegality, by striking therefrom everything except the first paragraph and the prayer, the part hereby stricken being designated in the demurrer of defendant as paragraphs 2, 3, 4, and 5. Defendant prays that this amendment be allowed and ordered filed as a part of the record in this case." This amendment was allowed by the court; whereupon the city filed an additional demurrer, as follows: "Now comes the Mayor and Aldermen of the City of Savannah in the above-named case, and demurs to the affidavit of illegality as amended, for the following reasons, to wit: 1st. Because the affidavit of illegality does not allege any facts to show why the said execution is illegal, nor why the amount of the same is not due either in whole or in part. For said reason the said Mayor and Aldermen of the City of Savannah moves to strike said affidavit of illegality." The court sustained the demurrer and dismissed the affidavit of illegality.

The main question to be determined in this case is whether it was incumbent upon the plaintiff in error to set out in her affidavit of illegality the facts upon which she based her claim that the execution was proceeding illegally, and that its amount, either in whole or in part, was not due, or whether her bald statement therein that the execution "is illegal, and that the whole of the amount of $93.93 stated in said execution is not due, and deponent denies that any part of said amount is due," is sufficient as against a timely special demurrer calling upon her to state the grounds of her defense to the execution. The method for contesting such executions issued and levied by the City of Savannah is prescribed by the act of 1885 (Georgia Laws, 1884-5, p. 362, § 5), as follows: "The defendant shall have the right to file an affidavit denying that the whole or any part of the amount for which the execution issued is due, and stating what amount he admits to be due, which amount so admitted to be due shall be paid or collected before the affidavit is received, and the affidavit received for the balance; and all such affidavits so received shall be returned to the superior court of Chatham county, and there tried, and the issue determined as in case of illegality, subject to all the pains and penalties provided for in cases of illegality for delay." It is earnestly contended by the able counsel for plaintiff in error that the

affidavit as amended was not subject to the special demurrer; that
it was the intent of the legislature, when the act in question was
passed, to prescribe the form of the affidavit which would make an
issue between the parties, and that an affidavit in such form is all
the pleading necessary for the defendant in execution to make.
To sustain this contention *Speer* v. *Athens,* 85 *Ga.* 49 (11 S. E.
802, 9 L. R. A. 402), and *Bacon* v. *Savannah,* 86 *Ga.* 301 (12 S. E.
580), are cited. In each of these cases an act similar to the one
now under consideration was involved. In the *Bacon* case the
Supreme Court held that the lower court erred in dismissing an
affidavit of illegality which contained substantially the same lan-
guage as the affidavit in the instant case, but in that case *there was
no special demurrer,* and the affidavit was dismissed on an oral
motion which declared merely that "it contained nothing constitut-
ing any defense to proceeding with the execution." This motion
was of the nature of a general demurrer, and the ruling of the Su-
preme Court was merely that an affidavit couched in the language
of the statute was good as against it. The court in that case did
not hold that the affidavit would have been good as against a timely
special demurrer; and such a holding would have been obiter.

In, *Speer* v. *Athens,* supra, the third headnote is as follows:
"Nor is the owner of such real estate thereby deprived of his prop-
erty without due process of law, the act providing that when ex-
ecution is issued for the amount of the assessment, he may file an
affidavit denying the whole or any part thereof, which affidavit is
made returnable to the superior court, the issue thereon to be tried
and determined as in cases of illegality. At such hearing he may
show fraud or mistake, error or excess in the amount of the execu-
tion, want of statutory authority to support the assessment, or
failure to comply with the provisions of the statute and the ordi-
nances in pursuance thereof." In that case, however, as will be
seen from the other headnotes and the opinion, the constitutionality
of the act had been questioned, and the sole question before the
Supreme Court was whether the act was constitutional. *No question
of pleading was passed upon.* The statute was attacked upon the
ground that it failed to afford due process of law, and the court
held that this was not a good ground, inasmuch as the act provided
for the filing of an affidavit of illegality denying the whole of the
amount of the execution, or any part thereof, and provided further

that such an affidavit should be returned to the superior court, where the issue thereon should be tried and determined as in cases of illegality. The court further said (p. 67) : "Finally, the act itself makes full provision for a hearing to the lot-owner as to every matter upon which he is entitled to be heard, by providing that if, upon his failure to pay, execution be issued against him, he may file an affidavit denying the whole or any part of the amount for which the execution issued, which affidavit is made returnable to the superior court to be tried and the issue determined as in cases of illegality. The property owner is thus informed of the amount of the assessment, and a time, place, and tribunal are provided, at and before which a hearing may be had, before his property can be taken and sold. If the sidewalk is not made in conformity with the requirements of the ordinance; if he is charged an amount in excess of the proportion for which he is assessable, he may be heard in reference thereto. 'He may show fraud, mistake, want of authority to support the assessment, or a failure to comply with the provisions of the statute. His constitutional rights are therefore fully protected. Whether the plan and system of local improvements as authorized and administered are the wisest, is a question to be addressed to the legislature.' 37 Minn. 345, supra." In the Minnesota case quoted from, the court was not passing upon a question of pleading, but upon the constitutional question of whether the statute involved afforded due process of law, and the court held that it did, since it provided that the defenses of fraud, mistake, etc., might be set up by the defendant in fi. fa. Neither in that case nor in the *Speer* case does the decision deal with any question of pleading, but both decisions are solely as to the constitutionality of the statute involved. In our opinion it is clear that neither of these decisions held, or intended to hold, that the defendant in fi. fa. could set up his defense without the usual and proper pleadings. To hold otherwise would be repugnant to all the rules and niceties of pleading.

The plaintiff in fi. fa., where it makes use of its right to demur specially, has the further right to require the defendant in fi. fa. to amend his affidavit of illegality where it is not therein stated why the execution is proceeding illegally. As was said in the decision of the Supreme Court in *Riley* v. *Wrightsville & Tennille R. Co.*, 133 *Ga.* 413 (65 S. E. 890, 24 L. R. A. (N. S.) 379, 18

Ann. Cas. 208): "Great liberality is allowed in pleading and amendments, and different aspects of a case can be presented in different counts. Useless detail and elaboration are not required. But there is no reason to permit vital facts in a case to be pleaded in vague, uncertain, or ambiguous terms, which may have the effect of not putting the adverse side on notice as to how to prepare the defense, or to allow the pleader to fail to refuse to amend as to such matters when called on to do so by appropriate demurrer." Moreover, the statute in the instant case expressly provides that the affidavit of illegality "shall be returned to the superior court of Chatham county, and there tried, and the issue determined *as in case of illegality*" (italics ours). How are cases of illegality tried and determined? In *Sharp* v. *Kennedy, 50 Ga.* 208, the second headnote is as follows: "An affidavit of illegality to an execution, setting up facts as a reason why the execution is proceeding illegally, must distinctly present the matter relied upon, so that, if not denied, the court may pass judgment intelligently, or if denied, that the jury may have distinctly before it the matter in issue." In *Green* v. *Rogers, 62 Ga.* 166 (2), the court said: "In an affidavit of illegality, the effect of which is to suspend the process of the court, the grounds should be set out in such manner as to show clearly that the execution is proceeding illegally by the conduct of the plaintiff or of the officers of the law; therefore, an allegation that the mortgage was altered, without stating who altered it, or that it was done without the consent of the mortgagor, was properly held insufficient." In *Baker* v. *Akerman, 77 Ga.* 89, which was a case where the lower court had sustained a demurrer to an affidavit of illegality interposed to an execution, the Supreme Court (on page 90) said: "There is no fact set out in this affidavit upon which issue can be taken, or on which perjury could be assigned, in the event it should turn out to be false. The statements are only conclusions, which it would be the province of the court, and not of the affiant, to draw from facts properly stated. . . . Such general averments amount to nothing. They are mere *brutum fulmen* and can not be passed upon by the court." In *Terry* v. *Bank of Americus, 77 Ga.* 528 (3 S. E. 154), the second headnote is as follows: "An affidavit of illegality which states in general terms that the note, 'the cause of action,' was paid off in full, without stating to whom the payment was made or whether

made before or after judgment, was so uncertain and elusive as to be demurrable." In *Thompson* v. *Fain,* 139 *Ga.* 310 (77 S. E. 166), the Supreme Court held as follows: "The ground of illegality which set up that some part of the costs was not properly taxed against the affiant was so vague and indefinite as to show no reason why such taxation was illegal, and was properly stricken."

It is contended, however, by counsel for the plaintiff in error that the rule of pleading in the instant case is not the same as in cases of executions issued upon a common-law judgment, because the statute (Civil Code, § 5305) under which such executions are issued provides that when "such execution shall be levied on property, such person may make oath in writing, *and shall state the cause* of such illegality" (italics ours); and in the statute involved in the instant case there is no such requirement. While, however, the code section just referred to requires that the affidavit shall state "the cause" of such illegality, it does not require that "the cause" shall be stated in detail, or that the specific facts upon which the cause may be based shall be given. It might be argued with some reason that the general form prescribed in the "paving" statute now under consideration gives the "cause" for the alleged illegality when it further states that neither the total amount named in the execution, nor any part thereof, is due. In our judgment, therefore, the same rule of pleading that applies to affidavits of illegality interposed to executions issued upon common-law judgments is applicable to the affidavit filed in this case.

It is earnestly and strongly contended by counsel for the plaintiff in error that as the affidavit here in question used the exact language contained in the statute, this "statutory pleading" is all that was necessary; and that it is not unusual for a statute to prescribe a form for defenses, and that whenever this is done, a compliance with the statute is all that is required. Counsel cites, in support of this contention, sections 4730, 5387, and 5539 of the Civil Code of 1910. In our opinion, rulings based upon these sections, which relate to cases so different in subject-matter from that of the case at bar, are not controlling here. However, in none of the decisions construing them that are cited by counsel for the plaintiff in error is it held that a plea in the form given by the statute is not subject to a timely special demurrer. Section

4730 refers to a counter-affidavit in a suit upon an open account in a justice's court, and provides merely that where the account has been proved by the affidavit of the plaintiff, and the defendant files his affidavit denying the justice and fairness of the whole or any part of the account, "the court shall not give judgment in favor of the plaintiff for that part of the account so denied, or controverted, unless supported by other proof." It is obvious that this code-section has no material bearing upon the question of pleading in the instant case. Section 5387 prescribes the form of a counter-affidavit of a tenant holding over, and it was held in *Moody* v. *Ronaldson,* 38 *Ga.* 652, that such an affidavit in the language of the statute was sufficient. But in that case *there was no special demurrer,* and the affidavit was dismissed on an oral motion which was of the nature of a general demurrer. In *Mitchell* v. *Masury,* 132 *Ga.* 360 (6), 364 (64 S. E. 275), it was held merely that "under the statutory affidavit the tenant can raise the issue that no oath was administered to or taken by the person subscribing the alleged dispossessory affidavit. Even if this issue could also be raised by special plea, the striking thereof by the court will not require a new trial, where the defendant is allowed to make the issue under his counter-affidavit, and the jury are instructed by the court as to the appropriate law." In neither of these cases is it held that the affidavit involved is not subject to a timely special demurrer. Section 5539 requires that all petitions shall set forth the cause of action in orderly distinct paragraphs, numbered consecutively, and that the defendant's answer shall deny any averment which is distinctly and plainly made in the petition, unless he shall state in his answer that he can neither admit nor deny such averment, because of the want of sufficient information. In *Ocean Steamship Co.* v. *Anderson,* 112 *Ga.* 835 (38 S. E. 102), which was an action of trover, the defendant filed the following plea: "And now comes the defendant by its attorneys at law, Lawton & Cunningham, and, answering the petition in the above-stated case, denies all the allegations of each paragraph of both counts of the petition." There was no special demurrer to this plea, but it was stricken on an oral motion on the ground that it was in effect nothing more than a plea of the general issue. The Supreme Court held that the trial judge erred in striking the plea *and in disallowing a proffered amendment to*

*the same;* as there was enough in the original plea by which to amend.

That the affidavit in the instant case uses the exact language contained in the statute does not necessarily render it sufficiently full to withstand a timely special demurrer. In criminal cases, for instance, the code declares that an indictment shall be deemed sufficiently technical and correct "which states the offense in the terms and language of this code, or so plainly that the nature of the offense charged may be easily understood by the jury." Penal Code, § 954. That section then prescribes the form for an accusation or indictment. Yet in *Johnson* v. *State,* 90 *Ga.* 441 (16 S. E. 92), it was held that although the indictment in that case *followed the statute, and was good in substance,* and sufficiently full to withstand a general demurrer or to support a conviction as against a motion in arrest of judgment, it was wanting in that degree of detail and definiteness which the accused had a right to demand, and that *the special demurrer thereto should have been sustained.* That decision was followed in *Langston* v. *State,* 109 *Ga.* 153 (35 S. E. 166, 779), where the court held that the special demurrer to the indictment should have been sustained although the indictment *was in the form prescribed by the statute,* and the Supreme Court there said: "While . . the Penal Code provides that 'every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense in the terms and language of this code, or so plainly that the nature of the offense charged may be easily understood by the jury,' yet, as has been held by this court, the purpose of this section was not to dispense with good pleading or to deny to one accused of an offense which may be committed in more than one way a statement of the facts relied on to establish his guilt sufficiently full and complete to put him upon reasonable notice of what he is called upon to meet." And this court, in *Burkes* v. *State,* 7 *Ga. App.* 39 (65 S. E. 1091), held that "An indictment for a violation of the act of 1905, in being intoxicated on a public street or highway, which fails to specify the public highway *except by the general terms of the statute* (italics ours), is too vague and indefinite to enable the accused to prepare his defense. The particular public highway upon which the accused appeared in a condition of intoxication should be designated or described." In that case the indictment

followed the language of the statute. We are not unmindful of the fact that indictments in criminal cases are especially subject to strict construction, and that these cases are not altogether on the same footing with civil cases, but in our judgment the rulings just cited have some bearing upon the question of pleading now being discussed.

In our judgment the plaintiff in fi. fa. in the instant case was entitled to know what facts it would have to rebut by proof upon the trial of the illegality. It should not be required to guess at these facts; which it must of necessity do where the affidavit of illegality contains no facts, but merely the assertion or conclusion of the pleader that the execution is proceeding illegally and that the amount stated therein is not due, either in whole or in part. This is especially true in a case like this one, where a municipal corporation is endeavoring to collect what it claims is due it upon an execution for street paving which was levied in the exercise of one of its governmental functions. In such a case the trial court should determine all questions possible that are raised by the affidavit of illegality; and how can it do so where the affidavit contains only the statements that the execution is proceeding illegally and that the amount named therein is not due, without giving any reason for such conclusion? The trial judge, and not the defendant in fi. fa., is the proper person to draw conclusions from the facts stated in the affidavit of illegality, and, where a timely special demurrer has been allowed, it is the right of the court, as well as the right of the plaintiff in fi. fa., to have the affidavit amended and the facts given. As was said by the Supreme Court in *Speer* v. *Athens,* supra: "It is not left to juries, whenever a property-owner resists an assessment as unreasonable and unnecessary, to say that the sovereign taxing power has abused its discretion. The constitutional guaranty of due process of law has been sometimes supposed to entitle every person to have any demand made upon him submitted to the determination of a jury. But, says Judge Cooley, 'Such a construction applied in tax cases would work a thorough and radical change in the principles on which taxation is now supposed to rest. It would cripple the legislative power and subject the action of the department whose function it is to make laws on its own views of the questions of public interest and public policy which the laws involve, to a review and possible reversal at

the hands of a jury. . . To make the juries the assessors of
the claims of the State upon individuals could only introduce an-
archy; one jury reaching one conclusion regarding the public needs,
and another another,' etc. Cooley, Taxation, p. 47. It is only in
those extraordinary cases where the assessment 'so far transcends
the limits of equality and reason that its execution would cease to
be a common burden and become extortion and confiscation' that
the courts can be called on to interfere."

In our judgment the correct, and the only reasonable, construc-
tion of the statute involved in this case is to hold that it means
that when an affidavit of illegality couched in the general language
prescribed in the statute is filed, the affidavit is sufficient to carry
the case to the superior court and to withstand a general demurrer,
or an oral motion to dismiss; but that it does not mean that such
an affidavit is not subject to a timely special demurrer which calls
for the particular facts upon which the general averments in the
affidavit are based. There was no contention that the special de-
murrer in this case was not sufficient in form, or should have been
more specific than it was. See, in this connection, the opinion of
Justice Lamar, in *Kemp* v. *Central of Georgia Ry. Co.*, 122 *Ga.*
561 (50 S. E. 465); also *Wrightsville & Tennille R. Co.* v.
*Vaughan*, 9 *Ga. App.* 371 (2), 375-7 (71 S. E. 691).

It is contended in the brief of counsel for the plaintiff in error
that the court erred in sustaining the special demurrer because it
was filed after the first term, although the affidavit had not been
materially amended. It appears, however, that this special de-
murrer was substantially identical with the first ground of the
original demurrer to the affidavit, which was filed at the first term;
and counsel for the plaintiff in error, in the oral argument, ex-
pressly abandoned this contention.

Another contention of counsel is that, even if the affidavit was
subject to the special demurrer, the court erred in dismissing the
affidavit without allowing the defendant time to amend it. Under
the facts of the case we see no merit in this contention. The de-
fendant in fi. fa. had voluntarily, by amendment, stricken all the
particular facts and details from her affidavit, and stood upon what
was left, and made no offer to further amend. Under such cir-
cumstances the trial judge was not bound to provide, in his order
sustaining the demurrer, that the defendant should have an op-

portunity to amend so as to meet the demurrer. *Ripley* v. *Eady*, 106 *Ga.* 422 (2) (32 S. E. 343); *Lamar, Taylor & Riley Drug Co.* v. *First National Bank*, 127 *Ga.* 448 (4) (56 S. E. 486).

In our judgment the court did not err in sustaining the special demurrer and in dismissing the affidavit of illegality.

However, since, under section 6288 of the Civil Code, no second affidavit of illegality can be received for causes which existed and were known, or in the exercise of reasonable diligence might have been known, at the time of the filing of the first, and since the contention of the plaintiff in error that her affidavit, being in the very language prescribed by the statute, was sufficient to withstand a timely special demurrer, had never been precisely passed on by either the Supreme Court or this court, and it appears that her contention was made in good faith, we consider it only fair to allow her an opportunity to amend her affidavit of illegality, and, if she can do so, to set up a substantive defense. Accordingly the judgment is affirmed, with direction that the defendant be allowed twenty days, from the time when the remittitur is entered upon the minutes of the lower court, within which to amend her affidavit.

*Judgment affirmed, with direction. Jenkins and Bloodworth, JJ., concur.*